LEROY THOMPSON, APPELLANT, v. CHARLES WAGNER, RESPONDENT.

Submitted May 27, 1927—Decided October 17, 1927.

For the appellant, *Raskin, Hornstein & Raskin.*

For the respondent, *McDermott, Enright & Carpenter.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Mr. Justice Parker in the Supreme Court.

KALISCH, J. (dissenting). I am constrained to withhold my acquiescence in the affirmance of the judgment of the Supreme Court reversing the judgment of the Court of Com-

mon Pleas, which latter tribunal had affirmed the finding of the deputy commissioner, that the accident which befell the petitioner-appellant arose out of and in the course of his employment, and that his employment was not a casual one, under the Workmen's Compensation act of 1911, as amended by paragraph 9, subdivision "C" of the act of 1919, pages 211, 212.

From the undisputed facts in the case, it appears that Charles Wagner, the prosecutor-respondent, had a contract with the Erie railroad to keep its tracks clear from obstruction, &c. One Thomas Carpenter was Wagner's superintendent, who hired and discharged employes. On January 28th, 1926, and prior thereto, there were snowfalls which covered the tracks of the railroad company. Carpenter, on behalf of Wagner, employed the petitioner, together with others, to clear the railroad tracks from the obstruction caused by the snowfall. While engaged in this work, the petitioner sustained an injury resulting from a blow of a shovel, handled carelessly by a fellow-employe engaged in the same work.

The defense relied on by the respondent was that the petitioner-appellant was a casual employe, and, hence, was not entitled to compensation under the Workmen's Compensation act.

It is important to bear in mind that Wagner's business was to keep the tracks of the railroad company clear of any kind of obstruction, whether caused by snow or dirt.

When the cause came to be heard by the deputy commissioner, he found, from the testimony before him, the facts as above briefly detailed, and that the employment of the appellant-petitioner was not within the meaning of the statute a casual one, and made an award in favor of the petitioner, which award was affirmed by the Court of Common Pleas, as above stated.

The Supreme Court, on a review of the judgment, states in its opinion the following: "We shall assume for present purpose that the accident arose out of and in the course of employment, but, nevertheless, conclude that the award should be set aside, in our opinion the employment was a casual

one." In giving a reason for reaching such a conclusion, the Supreme Court's opinion points out that, in *Laspada* v. *Public Service Railroad Co.*, 38 *N. J. L. J.* 103, a case which was tried in the Essex County Court of Common Pleas, Judge Osborne, in denying relief to a petitioner employed by the Public Service Railroad Company, to remove snow from the tracks of its railway, being engaged solely for that particular work, said: "I think the circumstances of this employment bring it clearly within the twenty-third paragraph of the act, which excludes "casual" employments. A casual employment is one which comes about, more or less, by chance, to meet the exigencies of a particular situation or a temporary emergency, and which may or may not be within the general scope of the business of the employer or the occupation of the employe."

Of course, this decision furnishes no precedent. It had never received the sanction of the Supreme Court nor of this court until the instant case was decided by the Supreme Court. It is always to be borne in mind that Judge Osborne was dealing with a case which was within the operation of the act of 1911, and the facts of which case disclosed that the railroad company was not in the business of removing snow.

Whether Judge Osborne was right or wrong in his definition of the meaning of the term "casual employment," as contained in the act of 1911, and in the sense that the legislature intended it to be defined, can have no bearing upon the question which arises under the amendment of the act of 1919. The Laspada case, *supra,* was decided in 1915. The legislature made no attempt to define in the act of 1911 its meaning of the term "casual employment." But after a test of the law, as ascertained from its operation during a period of nine years, we may fairly assume that in enacting the amendment of 1919, the law-making power had in mind the decisions of the courts of this state, on the question as to what character of hiring labor did or did not constitute a casual employment, and therefore amended section 3, paragraph 23 of the act of 1911, which act defines the term "employe," as follows: "Employe is synonymous with servant and includes all natural persons who perform service for an-

other for financial consideration, exclusive of casual employments;" and substituted for it the amendment found in the act of 1919, pages 211 and 212, under section 9, paragraph 23, subdivision "C," which reads: "Employer is declared to be synonymous with master, and includes natural persons, partnerships, incorporations; employe is synonymous with servant, and includes all natural persons who perform service for another for financial consideration, exclusive of casual employments, which shall be defined, if in connection with the employer's business, as employment, the occasion for which arises by chance or is purely accidental; or if not in connection with any business of the employer, as employment not regular, periodic or recurring."

The Supreme Court, in its opinion, in discussing this amendment, said: "The commissioner who heard the case, giving due weight to the cited decision, considered that the amendment of 1919 had altered matters in such wise that the decision was no longer a valid precedent. However this may be, we think the Laspada case was well decided, and are unable to see that the language added to the statute as quoted above operates to make the petitioner's employment other than casual. It was, of course, "in connection with the employer's business;" * * * the occasion for which arose by chance or was purely accident; if either, it was casual. We think it was plainly the first, if not the second. Whether there was occasion for it depended entirely upon whether a snowfall should occur. This was, of course, likely to occur sometime in the winter season, but not certain, and should it occur the time of occurrence depended wholly upon the vicissitudes of atmospheric condition."

I cannot agree with the view of the Supreme Court that the amendment in question added nothing to nor made any substantial change as to what was to be understood by the term "casual employment." Surely the legislature must have intended to accomplish some desirable and effective purpose by the amendment. It may, therefore, be safely assumed that because of the decision in the Laspada case, *supra,* and of the decisions in other cases of like character following and expressing similar views, the legislative mind became appre-

hensive as to the effect of the too comprehensive construction given to the term "casual employment" by the decisions referred to, in that the construction adopted tended to exclude a large proportion of the labor class from the benefits of the Workmen's Compensation act, and in order to remedy this apparent evil the amendment defining what constituted a casual employment was brought into being. For it is a matter of common knowledge that there are thousands of individuals in our cities and towns who have neither a trade nor profession and are wholly dependent upon unskilled manual labor for a livelihood, and who are engaged in such work as digging trenches, sweeping streets, shoveling snow, shoveling coal, &c., and in the southern part of the state, during the season, engaged in picking tomatoes, cranberries, &c., and that thousands of dollars are expended annually in these various employments; that in the city of Newark alone, thousands of dollars are spent every winter in clearing the streets of snow, in which employment a large proportion of the labor class is employed. And it is also a matter of common knowledge that there are contractors who undertake by contract to do the character of work above indicated, whether the same be for a short or a long period, and that the contractor necessarily employs labor to that end. Therefore, it is difficult to believe that the legislature intended to exclude from the benefit of the Workmen's Compensation act a workman who is injured in his work where the relation of employer and employe exists, and the employment is one connected with the business in which the employer is engaged.

Our Workmen's Compensation act is in many of its features modeled on the English act which was adopted in England in 1906, and since then up to the present time that act has passed through a series of amendments.

The English act of 1925, in enumerating what persons are excepted from the definition of workmen entitled to compensation in case of accident, as found in *Willis' Book on Workmen's Compensation* (*24th ed.*), 1925 (at *p.* 99), under subdivision (b), set forth: "A person whose employment is of a casual nature and who is employed otherwise than for the purpose of the employer's trade or business." * * *

What is deemed to be a casual employment under this provision of the act is stated by Mr. Willis (at *p.* 114), as follows: "The expression 'casual' is incapable of exact definition in law. It seems 'to infer something midway between the regular employment of a workman and a simple engagement for a single day, and I think that 'casual' is here used not as a term of precision but as a colloquial term.' *Knight* v. *Bucknill* (1913), 6 *B. W. C. C.* 160, per Hamilton, L. J.; *Smith* v. *Buxton* (1915), 112 *L. T.* 893; 8 *B. W. C. C.* 196. Where upon all the facts there is a reasonably debatable question whether the employment is casual or regular, it is a question of fact for the arbitrator. *Ibid.; Stoker* v. *Wortham* (1919), 1 *K. B.* 499; 12 *B. W. C. C.* 34; *Williams* v. *Haigh* (1925), 18 *B. W. C. C.* 549."

In the instant case it is to be observed that both the deputy commissioner and the Court of Common Pleas found as a fact that the employment in which the petitioner was engaged was not a casual one.

The fallacy of the reasoning, of the opinion of the Supreme Court, leading to its conclusion that the employment of the petitioner-appellant was a casual one within the legislative definition of "casual employment," lies in the unwarranted assumption that the snowfall which covered the railroad tracks was the determining factor whether or not the occasion of the employment was due to chance or was purely accidental, whereas it is quite obvious that the fundamental occasion which induced the employment by the employer was to keep the railroad tracks free from obstructions of whatsoever kind or nature and which work was a matter directly connected with his business, and, therefore, in such a case it cannot be properly said that the "occasion" to keep the tracks clear, arose by chance or was purely accidental.

"Casual employment," when connected with the employer's business, is defined in the act to be "as employment, the occasion for which arises by chance or is purely accidental."

The word "occasion" refers solely to the employment which must arise by chance or be purely accidental, in order to constitute the employment as a casual one.

It is a matter of common knowledge that it is necessarily a continuous business to keep railroad tracks free from oil or grease, or ice or snow in winter time, when snow or ice are reasonably to be expected, and from debris that accumulates in railroad yards, therefore it cannot be fairly maintained that the occasion for the employment of labor to remove the impediments or obstacles from the tracks is casual employment within the legislative definition.

On this phase of the case the Supreme Court, in its opinion, says: "We think it was plainly the first, if not the second. Whether there was occasion for it depended entirely on whether a snowfall should occur. This was, of course, likely to occur at some time during the winter season, but not certain, and should it occur, the time of occurrences depended wholly on the vicissitudes of atmospheric conditions," and therefore the snowfall was by chance, thereby rendering the employment a chance employment.

This view is in direct opposition to the view expressed in the amendment, as I read it, namely, that the *occasion* of the employment refers to the employment arising from the business of the employer, which in this instance was to keep the tracks free from obstructions arising from any cause. A fall of snow, obstructing the tracks, was therefore a mere incident, among many others of diverse character which might be expected to occur in the course of the employer's business, and be connected therewith. But be this as it may, I am unwilling to subscribe to the theory of the Supreme Court that a snowfall, at the end of the month of January, in the zone we live in, is such an unexpected event that it necessarily falls into the realm of chance. What may be naturally expected from the operation of the laws of nature removes the expected event from the doctrine of chance. For if the event does not happen its failure to materialize cannot be properly ascribed to chance but rather to the operation of some natural law. Therefore, it does not seem to me to be a sound proposition that because the day upon which the snow was to fall is not certain, therefore, if snow does fall, it does so by chance, and this circumstance infects the employment with a chance employment and defeats recovery.

I am unwilling to endorse a theory which practically holds that a law of nature, as manifested by the elements that so happily and regularly distinguish the diverse seasons of the year, operates by chance. Therefore, it seems to me, it cannot be properly held that the fall of snow rendered the occasion of the employment one of chance. For, if the chance theory is eliminated from the fall of snow, it follows that since the employment was in connection with the employer's business, the employment was not a casual one within the meaning of the statutory definition.

As has already been amply pointed out, the question whether or not an employment is casual is a factual one, and under the method of procedure pursued in the case *sub judice,* was for the determination of the deputy commissioner, who found under all the facts and circumstances of the case that the occasion of the petitioner's employment was not a casual one, and I think the testimony supports such a finding, and, therefore, the finding was not reviewable.

Under the English statute, a person whose employment is of a casual nature, and who is employed otherwise than for the purpose of the employer's trade or business, is excepted from those persons who are entitled to compensation under the Workmen's Compensation act.

It is to be observed that the language of the English statute is narrower in terms than that of our statute. For, under our act, if the employment is in connection with the employer's business and the occasion for such employment does not arise by chance nor is purely accidental, the employe comes within the operation of the Workmen's Compensation act. Nevertheless, it was held in England that the cutting of a hedge belonging to respondent which had overgrown applicant's garden (*Tombs* v. *Bomford* (1912), 5 *B. W. C. C.* 338); and where persons were employed assisting the permanent workmen of saw-millers and contractors for woodwork in dismantling a crane which had been purchased by the employers and was being removed for re-erection at an extension of their works, which was in contemplation but was not begun (*Boothby* v. *Patrick & Son* (1918), 120 *L. T.* 7; 11 *B. W. C. C.* 201); and in a case where a workman was

employed in thatching the roof of respondent's farm house, the evidence being it was a common practice for farmers to thatch their own houses, though some employed thatchers, and that applicant was not employed under any definite agreement but was to be paid five shillings a day (*Manton* v. *Cantwell* (1920), *A. C.* 781; 13 *B. W. C. C.* 55, overruling (1918) 2 *L. R.* 563; 12 *B. W. C. C.* 484), that these were not casual employments. *Willis' Workmen's Compensation*, *p.* 315.

The cases referred to exemplify the true spirit in which a Workmen's Compensation act is to be interpreted and enforced.

In *Jersey City* v. *Borst*, 90 *N. J. L.* 454 (a Supreme Court case), Mr. Justice Black, in discussing the purview of the Workmen's Compensation act (at *p.* 456), very aptly remarks: "This law, it will be noted by a reference to its terms, is a remedial law of prime import, and should be liberally construed. It should be broadly construed." To like effect is the case in the Supreme Court of Errors of Connecticut. *Powers* v. *Hotel Bond Co.*, 89 *Conn.* 143; 93 *Atl. Rep.* 247.

For the reasons herein expressed, my vote is to reverse the judgment of the Supreme Court and to affirm the judgment of the Court of Common Pleas, affirming the judgment of the deputy commissioner.

Chancellor Walker authorizes me to state that he concurs in the views expressed in this opinion.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, MINTURN, KATZENBACH, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 11.

*For reversal*—THE CHANCELLOR, KALISCH, JJ. 2.