38 N.J. Super. 516 (1955)
119 A.2d 487
FRANK MALLOY, PETITIONER-APPELLANT,
v.
CAPITOL BAKERY, INC., RESPONDENT-APPELLEE.
Superior Court of New Jersey, Middlesex County Court, Law Division.
Decided December 21, 1955.
*517 Mr. Elias G. Willman, attorney for petitioner-appellant.
Mr. John F. Leonard, attorney for respondent-appellee.
MORRIS, J.C.C.
This is an appeal from the dismissal of a petition for compensation entered in the Division of Workmen's *518 Compensation at the close of petitioner's case on the ground that the employment being "casual" the said Division had no jurisdiction in the matter.
The facts in the case are unusual and counsel for the respective parties in an exhaustive research of the cases have been unable to cite any precedent directly in point on the precise issue here involved.
The pertinent part of the statute applicable is R.S. 34:15-36 which provides:
"`Employer' is declared to be synonymous with master, and includes natural persons, partnerships, and corporations; `employee' is synonymous with servant, and includes all natural persons who perform service for another for financial consideration, exclusive of casual employments, which shall be defined, if in connection with the employer's business, as employment the occasion for which arises by chance or is purely accidental; or if not in connection with any business of the employer, as employment not regular, periodic or recurring; provided, however, that forest fire wardens and forest fire fighters employed by the State of New Jersey shall, in no event, be deemed casual employees."
From the testimony it appears that the petitioner Frank Malloy was by trade a baker and for approximately a year prior to the date of the accident had been employed by the Snow Flake Bakery in Elizabeth. He did not have to work on Monday, July 5, 1954, and was asked by the business agent of his local to work on the said day for the respondent Capitol Bakery, Inc., to relieve another employee who was ill on that date. He did go to work for the respondent on July 5, and while working injured his back.
It was proven that at least in the baker's trade the old system of a baker being hired to work by and for a particular bakery, for which he would work only and for no one else, has been supplanted by the new system in which there is little or no real "hiring" familiar in law for centuries and in which the bakery takes such men as are sent to it by the business agent of the local union as circumstances require and with the end in view of filling the needs of the employer and at the same time giving to members of the union the most days of work. Time marches on with the undoubted *519 result that instead of employees losing time because of the lack of work in a particular bakery and unfilled orders in another bakery because of lack of help, both the employer and the employee, as well as the public, benefit by the new system whereby the business agent of the local finds work for the worker and labor for industry.
The testimony discloses that in addition to working for Snow Flake and Capitol, petitioner had also worked for three other bakeries.
The agent of the local testified "every baker working for us in our Local is subject to my call" and that "you cannot say that a man has a Sunday off or a Monday off, because many of my shops work seven days a week, and the practice is you will have a man coming in one shop one day a week or every other week. We fit the needs of the men to the employer. If an employer's work is such that he requires four men one day a week and two men all the rest of the week, we will give him two extra men for that one day of the week."
The testimony of the business agent was corroborated by the respondent's foreman, who was called as a witness on behalf of the petitioner. He testified that he, too, was a member of the union and that during the five years of his employment with the respondent he was also, on occasion, assigned by the union to work for other employers:
"Q. What is the practice, as you know it, in the baking industry?
A. I could tell you for the night time we have, during the week, we have five men; and on Thursday, Fridays, we have six men. On Saturday we have twelve men, and there are three steady men in the shop who work six days a week, what I call steady. * * * Altogether I would say throughout the week on the bread side we have thirty different employees to cover that five man shop. * * * I never see the same man every night. It's a different man. Take this man's day off or that man's day off or another thing to fill in or anything, it's never one set."
The petitioner testified:
"A. Well, I was off on the fifth of July. The fourth of July fell on a Sunday and the business agent asked me if I would go *520 to the Capitol Bake Shop to relieve one of the men that was sick there on Monday, that was the fifth of July. So I agreed to go and do the extra day's work to relieve the other baker."
In dismissing the petition, the deputy director said:
"Every case must be evaluated on its own specific merits and the facts that are presented. * * * I can recognize that the custom of the trade is that these men are shifted around from job to job, depending upon the requirements of the baking employers. * * * Now, if we were dealing with that sort of a situation, I would understand that there would be liability even though the man got hurt the first day he worked; but we have the petitioner's own sworn testimony as to the circumstances and the occasion of his employment. We have a case which is different than any other case that I ever listened to in this field of activity. * * * I am not convinced that in spite of the practice that this particular petitioner would have been taken off his job with the Snow Flake Bakery if he didn't have the day off on July 5. Now, coincidental with the petitioner having his day off on July 5, what does the respondent, Capitol Bakery, have. They have an employee who is sick, they need a man to take the place of the sick man. * * * So there were two unusual circumstances that happened to fit in, in a perfect pattern, that by chance under these circumstances, made it possible for the petitioner to go to work for the Capitol Bakery for this day, and as testified, for this day only. * * * The petition must therefore be dismissed on jurisdictional grounds only. * * *"
A motion to dismiss at the close of petitioner's case necessarily admits the truth of petitioner's evidence and every favorable inference which might be legitimately drawn therefrom. Ptak v. General Electric Company, 16 N.J. Super. 573, 575 (App. Div. 1951).
The burden of proving that the employment was casual rests upon the employer. Burdick v. Liberty Motor Freight Lines, Inc., 128 N.J.L. 229 (Sup. Ct. 1942); Stein v. Feldon, 17 N.J. Super. 311, 314 (App. Div. 1952); Haytko v. William Crabb & Co., 17 N.J. Super. 95, 97 (Cty. Ct. 1951), affirmed per curiam 21 N.J. Super. 330 (App. Div. 1952).
In my opinion the occasion of the employment did not arise by chance or was purely accidental but came about by the present labor-management system whereby the daily employment needs of industry is filled by assignment of men *521 by and from the union. It is undisputed that petitioner was neither asked by the employer to work on the day in question nor did petitioner seek work from the employer. Instead, the job was found for him by the business agent for the union. The case is barren of any testimony to negative the inference that the employment was not a part of the regular practice to fill the needs of industry where the need was due to increased business, to take the place of sick employees or for any other cause.
Petitioner, as well as all members of the local union, are held in reserve by the union to be sent when and where needed by industry. For this court not to take judicial notice of present-day union practices would be to ignore realities.
The case, therefore, is distinguishable from Thompson v. Wagner, 103 N.J.L. 230, 231 (Sup. Ct. 1927), affirmed per curiam, 104 N.J.L. 198 (E. & A. 1927), wherein the court held:
"There was no claim that he was held in reserve; that there was any regularity about his being called on, or any recurrence of employment at all, as in Sabella v. Brazileiro, 86 N.J.L. 505, affirmed 87 N.J.L. 710; the case simply shows that a snowfall occurred; that outside chance laborers were needed to clear it off; and that petitioner was hired as one of these chancemen."
Petitioner was not a "chance laborer" who was recruited from the highways and byways. He was a member of a skilled trade union, regularly employed at any one of a number of bakeries, the employees of which were selected and sent to work by the local labor union.
Even assuming that petitioner's work was only for a single day, his right to compensation cannot be denied, if it was not occasioned by chance or pure accident and was in accordance with the plans of the respondent to carry out its usual business.
In Thompson v. G. Correale & Sons, Inc., 130 N.J.L. 431, 433 (Sup. Ct. 1943), the court held:
"There can be no question but that the employment was in connection with the prosecutor's business. Did the occasion for the employment arise by chance or purely by accident? From all the *522 evidence it cannot be said to have been either by chance or by accident. Even assuming that his work was to be for a single day, it is clear that petitioner was hired as an extra man for this job in accordance with the plans of the prosecutor and in carrying out its usual business. The occasion, therefore, was not by chance or accident, but was necessary to carry out prosecutor's usual business. The duration of the employment is not the test, but whether it was necessary to the carrying out of prosecutor's business in the usual way. Mullen v. Walker, 105 N.J.L. 199; Price v. Price, 9 N.J. Misc. R. 435. Clearly this was the usual business of the prosecutor. The only unusual feature of it was the amount of it and not the character of it. The mere fact that the amount of the work was unusual, requiring the employment of additional help, does not lead to the conclusion that the occasion for it arose by chance so that the employment would be casual, within the meaning of the statute."
In Tettemer v. Slisz, 131 N.J.L. 185 (E. & A. 1944), petitioner was employed by the operator of a dairy farm to help rebuild a barn which had been accidentally destroyed by fire. In holding that petitioner's employment was not "casual" the court said:
"The fact that the barn had accidently been destroyed, it seems to me, is of no significance. To provide housing for his herd is a regular part of his business, whether rebuilding a destroyed barn or building an additional one made necessary because of increased herds and enlarged business."
So in the case at bar, the employment of petitioner was a regular part of respondent's business and the circumstance that the work was made necessary by the accidental illness of another employee or by a holiday, did not make the employment "casual."
"Casual employment," said the court in Ludwig v. Kirby, 13 N.J. Super. 116, 125 (App. Div. 1951), "is one which comes about more or less by chance, to meet the exigencies of a particular situation or a temporary emergency."
A careful examination of the decisions demonstrates that employment in connection with the regular business of the employer is held to be "casual" only when it occurs as the result of an immediate emergency (Thompson v. Wagner, supra; Cierpik v. Borough of Manasquan, 2 N.J. Super. *523 110 (App. Div. 1949)), or when the employment comes about by a chance meeting between the employer and one not regularly employed in that particular occupation (Ludwig v. Kirby, supra).
I am unable to concur in the finding that the occasion of the employment arose by chance or was purely accidental, the only alternative prescribed by the statute to make it "casual" where it arises in connection with the employer's business.
The sine qua non of workmen's compensation legislation is the coverage by insurance so that the cost of industrial accidents will be passed on to the public. See 1 Larson, Workmen's Compensation Law, 12, par. 2.70. "Casual" employments are, therefore, only exempted because they occur under circumstances rendering it difficult to provide coverage in advance.
Day-to-day variations in an employer's payroll are covered whether they occur through a union call system, such as in the case at bar, or in some recognized form of seniority and recall which is practiced throughout much of industry.
To hold that such employment is "casual" barring all coverage in accidents or even death arising therein, is to say the least, so contrary to our vaunted profession of imposition on the public of the cost of industrial accidents and death, and so far reaching, as to be revolutionary.
Since the early declaration that the Workmen's Compensation Act "is a remedial law of prime import, and should be liberally construed" (Mayor, etc., of Jersey City v. Borst, 90 N.J.L. 454 (Sup. Ct. 1917)), our courts have uniformly liberally construed same. Not to liberally construe and determine various compensation cases under modern management-labor conditions of supplying workmen when and where needed in industry, would nullify all such decisions construing our act.
The judgment of dismissal of the petition is accordingly reversed, with directions to the Division of Workmen's Compensation of the Department of Labor to proceed to the merits of the claim.