108 N.J. Super. 293 (1970)
261 A.2d 151
CLAUDINE G. BIGER, PETITIONER-RESPONDENT,
v.
DR. R.C. ERWIN AND/OR E.B. STEWART, RESPONDENTS-APPELLANTS. CLAUDINE G. BIGER, PETITIONER-RESPONDENT,
v.
MONMOUTH PARK JOCKEY CLUB, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Monmouth County Court, Law Division.
Decided January 16, 1970.
*295 Mr. Herbert E. Greenstone appeared for petitioner-respondent (Messrs. Greenstone & Greenstone, attorneys).
Mr. Peter P. Kalac appeared for respondent-appellant Dr. R.C. Erwin (Messrs. Lane & Evans, attorneys).
Mr. John W. O'Brien appeared for respondent-appellant E.B. Stewart (Messrs. O'Brien, Brett & O'Brien, attorneys).
Mr. William F. Perry appeared for respondent-appellant Monmouth Park Jockey Club (Messrs. Schneider and Morgan, attorneys).
McGANN, J.C.C.
This is a workmen's compensation appeal. The facts are not in dispute. The legal consequences of those facts are.
Pierre Biger was a jockey. He died on July 10, 1967 as a result of injuries received while riding in a steeplechase race at Monmouth Park. The horse on which he was riding at the time, "Cosmic Bull," was owned by respondent Dr. E.C. Erwin and trained by respondent E.B. Stewart. A dependency claim petition was filed on behalf of decedent's widow and infant son against Erwin and Stewart. A separate petition was filed against the owner of the race track, the Monmouth Park Jockey Club, and consolidated for hearing purposes.
The issues presented are these: (1) Was Biger an employee or an independent contractor? (2) If he was an employee, was the employment "casual" (and not covered by workmen's compensation)? (3) If he was an employee, who was his employer? The compensation judge found that Biger was an employee, not casual in nature, and awarded benefits against both Erwin and Stewart as employers. He found no employment relationship with Monmouth Park Jockey Club.
Dr. Erwin is a physician and surgeon living and practicing in Allentown, Pennsylvania. He owned a number of race horses, among them "Cosmic Bull." All of these horses *296 were trained by Stewart, whom Erwin had first met in 1965. There was a verbal agreement between Erwin and Stewart whereby Stewart would train, feed and handle the horses for $17 a day each plus 10% of any of their winnings. I find that once the horse was turned over to Stewart, he had complete charge of it. Dr. Erwin relied completely on his judgment. Stewart could and did move the horses from track to track as the season progressed; he decided when to enter the horses in races; his was the selection of the jockey who would ride the horse. As owner, Dr. Erwin had the right to countermand Stewart's decisions and to make judgments affecting the horse and selection of its jockey, but in fact he never did so. Erwin would pay the jockey from an owner's trust account which he maintained with Monmouth Park Jockey Club in accordance with the rules of the New Jersey Racing Commission. Erwin did not have any particular jockey under contract to ride for him. When the services of a jockey were required, Stewart would engage a "pool" or "freelance" jockey. In addition to training Erwin's horses, Stewart also trained for other owners as well as horses of his own. He never considered the jockeys to be his employees unless they were riding horses owned by him.
Both Erwin, as owner, and Stewart, as trainer, were required by the rules of the Racing Commission to maintain workmen's compensation insurance coverage for their employees. Both had such coverage at the time of this incident.
A few days before July 10, 1967, and while Stewart and "Cosmic Bull" were at Belmont Park in New York, Stewart decided to enter the horse in a steeplechase race to be held at Monmouth Park as the third race on July 10. He spoke with Bobby McDonald, a "pool" rider then at Belmont, and McDonald agreed to ride the horse. Stewart made the entry of "Cosmic Bull" in the race by telephone and listed McDonald as the rider. All of this was in accordance with rule 601 of the Commission which provides:
A licensed Trainer may represent the owner in the matter of entries, declarations, and the employment of jockeys.
*297 On the morning of the race McDonald came to Stewart, told him he had a chance to ride a better horse that day, and asked to be excused from his agreement to ride "Cosmic Bull." He told Stewart that he already had another jockey, Biger, "lined up" to ride in his place. Stewart had never met Biger, but agreed to the change. Stewart first met Biger that day in the paddock just before the race and after the horse had been saddled. Biger wore the colors of the owner, Dr. Erwin. Stewart gave Biger some brief instructions as to the manner in which the horse should be raced. During the course of the race Biger reecived the injuries which led to his death.
Monmouth Park is one of the three licensed "flat" racing tracks in New Jersey. It is owned and operated by the Monmouth Park Jockey Club and is subject to all the rules and regulations of the New Jersey State Racing Commission. It does not directly employ any jockeys. It does maintain owners' trust accounts and pays jockeys on behalf of the owners from those accounts. It also provides locker room, health and recreational facilities for jockeys. Under the rules of the Commission, it does have the right to prohibit certain jockeys from riding at the track if it is felt that their presence is not in the best interests of racing. This power is exercised rarely. See Martin v. Monmouth Park Jockey Club, 145 F. Supp. 439 (D.C.N.J. 1956), aff'd 242 F.2d 344 (3 Cir.1957).
The controlling statute, N.J.S.A. 34:15-36, in its pertinent portions provides as follows:
"Employer" is declared to be synonymous with master, and includes natural persons, partnerships, and corporations; "employee" is synonymous with servant, and includes all natural persons, including officers of corporations, who perform service for an employer for financial consideration, exclusive of casual employments, which shall be defined, if in connection with the employer's business, as employment the occasion for which arises by chance or is purely accidental; or if not in connection with any business of the employer, as employment not regular, periodic or recurring; * * *.
*298 To determine whether an employer-employee relationship exists for purposes of workmen's compensation coverage, our courts have emphasized certain aspects of such a relationship, i.e., (1) the employer's right to control the details of the employee's work; that is, not only the results to be accomplished but the manner in which the business or work shall be done; (2) the right to discharge; (3) whether the service was performed for a financial consideration. Mahoney v. Nitroform Company Inc., 20 N.J. 499 (1956); Gross v. Pellicane, 65 N.J. Super. 386 (Cty. Ct. 1961).
The degree of control necessary to constitute an employer-employee relationship will vary depending on the relative nature of the work involved. Thus, where the employee has special skills the degree of control over details by the employer will be minimized. Brower v. Rossmy, 63 N.J. Super. 395 (App. Div. 1960).
As stated in Marcus v. Eastern Agricultural Ass'n., Inc., 58 N.J. Super. 584, 590 (App. Div. 1959), rev. on other grounds 32 N.J. 460 (1960),
The status of the petitioner is to be resolved upon the totality of the facts surrounding the relationship with due regard for the attendant circumstances, the object in view, and the course of practice in its execution.
All of these "tests" have been synthesized "under the totality of circumstances" of the individual case into the so-called "economic dependence" test, i.e. "the extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business." Brower v. Rossmy, supra, 63 N.J. Super., at 406.
It is to be observed that our courts, in view of the basic objective of construing workmen's compensation coverage as liberally as possible, Hannigan v. Goldfarb, 53 N.J. Super. 190, 195 (App. Div. 1958), have devised more and more refined tests. That is not to say that we should ignore traditional *299 concepts of the employer-employee relationship as well as fundamental principles of the law of agency in order to find as many employers as possible for one individual. The instant case furnishes a good illustration of that point.
Petitioner seeks a declaration that her husband was simultaneously the employee of Erwin, Stewart and the Monmouth Park Jockey Club. Each of the putative employers carries workmen's compensation insurance. Under those circumstances there is no reason to go beyond the actual relationships among the parties as it must have been clearly and reasonably understood by them.
Applying the three basic tests in the totality of circumstances of this case, it is obvious that Monmouth Park was not an employer of Biger. It had no right to control the details of his ride; it had no right to hire or fire him; it advanced no financial consideration to him nor did it receive any from him.
It is equally obvious that Biger was an employee of the owner, Erwin. Erwin, if he had chosen to do so, could have exercised control over Biger's ride (to the extent practicable under the relative nature of the work). He certainly had the right to hire and fire the jockey who was to ride his horse. It was to him that the jockey looked for payment through his owner's trust account. It is the existence of the right to exercise control and to hire and discharge that is determinative; not the actual exercise of those rights. Mahoney v. Nitroform Company, Inc., supra.
Was Biger also the employee of Stewart? Stewart had been given the right to control and to hire and fire by Erwin. He did not pay the jockey nor did the jockey look to him for payment. He was paid from the owner's account at the track. All of Stewart's activities in connection with Biger were solely as agent for Erwin, and this was clear to Biger. Biger knew he was riding for Dr. Erwin, not Stewart, and that he would be paid by Erwin, not Stewart. Biger was not an employee of Stewart.
*300 Was Biger's employment by Erwin through Stewart "casual employment" and excepted from coverage. Casual employment is defined in N.J.S.A. 34:15-36:
* * * if in connection with the employer's business, as employment the occasion for which arises by chance or is purely accidental * * *.
Erwin was in the business of owning and racing horses. The engagement of a jockey's services to ride those horses most clearly is connected with that business. Keeping in mind the nature of the racing business, that horses are not run on a regular periodic schedule but only when many unpredictable circumstances are deemed right by the owner or trainer, the occasion for employment of a jockey to ride "Cosmic Bull" cannot be said to arise by chance or to have been purely accidental. "Cosmic Bull" was a race horse. It would need a jockey whenever it was raced. The occasion for racing did not arise by accident or chance but was the result of a well considered judgment. Gross v. Pellicane, supra, at 394. The fact that Biger actually turned out to be the jockey rather than someone else is no more employment by chance than is the hiring of a carpenter from a union hiring hall. Malloy v. Capitol Bakery Inc., 38 N.J. Super. 516 (Law Div. 1955). This employment was not casual.
The judgment of the Division of Workmen's Compensation is reversed insofar as the trainer, E.B. Stewart, is concerned. It is affirmed as to the owner, Dr. R.C. Erwin and the Monmouth Park Jockey Club.