WALTER GRAHAM, AN INFANT BY HIS GUARDIAN *AD
LITEM*, ELVIRA GRAHAM, PETITIONER-APPELLANT,
v. MAX GREEN, INDIVIDUALLY, AND TRADING AS SER-
VICE BEVERAGE CO., RESPONDENT-RESPONDENT.

Argued September 14, 1959—Decided December 7, 1959.

*Mr. Harry Cohn* argued the cause for the petitioner-appellant.

*Mr. Isidor Kalisch* argued the cause for the respondent-respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J. The Appellate Division, in an opinion reported at 54 *N. J. Super.* 397 (1959), reversed a County Court judgment which had sustained a compensation award to petitioner. We granted certification. 29 *N. J.* 509 (1959).

The respondent Max Green, trading as Service Beverage Co., was engaged in the business of distributing soft drinks. He had six or seven employees who operated delivery routes and who generally cleaned up such incidental breakage of bottles as occurred in the normal course of the business. There was testimony that such breakage never exceeded "two or three cases" of twelve bottles each. On or about Wednesday, May 23, 1956 a truck driver named Willie Benjamin, employed by the Society Club Beverage Co., called at respondent's place of business to pick up some empty bottles. While

he was removing bottles stacked against a permanent partition, it unexpectedly collapsed causing many of the bottles to fall and break. The evidence indicated that several hundred to a thousand bottles were broken. On or about Friday, May 25, 1956 the respondent, through his agent Saul Kopf, asked Benjamin to come on his day off and clear the debris and to bring a helper with him. On Saturday morning, May 26, 1956 Benjamin and the petitioner, who was in the employ of the Robert Treat Beverage Company, came to respondent's place of business. They received some equipment and instructions from Saul Kopf, cleared the broken glass and left about 4:00 P. M. after being paid by Mr. Kopf. Benjamin received $11 and petitioner received $10. Admittedly this was the only occasion when petitioner ever did any work for respondent in any connection whatever.

While petitioner was clearing the glass at respondent's place of business, he cut his right thumb. On the following Monday and Tuesday he went to work for his regular employer, the Robert Treat Beverage Company. His thumb hurt and, after reporting to a clinic, he discontinued his work with the Robert Treat Beverage Company. He was treated by a private physician, was thereafter admitted to the Martland Medical Center where the diagnosis was osteomyelitis of the right thumb, and was in due course discharged. He filed a petition for compensation in which, *inter alia,* he alleged that he was under 18 years of age at the time of the accident and sought double recovery under *N. J. S. A.* 34:15–10. The Deputy Director in the Division of Workmen's Compensation found for petitioner and rendered an award of double compensation, one-half payable by respondent individually and one-half payable by respondent's insurance carrier. The County Court affirmed, but the Appellate Division reversed on the ground that petitioner's employment by respondent was a "casual" one excluded from the Workmen's Compensation Act by the terms of *N. J. S. A.* 34:15–36.

The Workmen's Compensation Law originally excluded "casual employment" without definition of the term. *L.* 1911, *c.* 95, § 23, *p.* 144. Its elusiveness quickly became apparent. See *Hubbe v. Lynch,* 36 *N. J. L. J.* 87, 89 (*C. P.* 1913). In 1919 the Legislature amended the act to exclude (*L.* 1919, *c.* 93, § 9, *p.* 211; *N. J. S. A.* 34:15–36):

"\* \* \* casual employments, which shall be defined, if in connection with the employer's business, as employment the occasion for which arises by chance or is purely accidental; or if not in connection with any business of the employer, as employment not regular, periodic or recurring \* \* \*."

In its practical application to business employments, the statutory definition has not been serviceable. Surely the judicial results heretofore reached cannot be reconciled; nor would one venture a precise interpretation with confidence that it will meet the sundry situations which will arise.

Statutes elsewhere adopt different patterns. A majority of the states exclude employment if it is *both* (1) casual and (2) not in the usual course of the employer's business (some, following the English statute, substitute "otherwise than for the purpose of" the employer's business for the second requirement). At one time a number of states excluded the employment if *either* of those two requisites appeared. A few measure coverage by the period of employment, a test which at least is precise. And still others have dropped the exclusion, doubtless in recognition of the inherent difficulties of the usual tests and the benefit of coverage to both employer and employee in the light of present-day business practices. See 1 *Larson, Workmen's Compensation Law,* § 51.11 (1952); 2 *Schneider, Workmen's Compensation* (3d ed. 1942), § 279. Numerous attempts in our State to eliminate the exclusion have failed.[1] At any rate, our

---

[1] Between 1945 and 1957 a number of bills proposing general revisions of the Workmen's Compensation Act and eliminating the casual employment exception were introduced but never became law. See 1945—S25; 1947—A232; 1949—A147; 1950—A136; 1951—

statutory definition is unique, and hence judicial expressions elsewhere are not too helpful.

Lexicographers define "casual" to mean "1. Happening or coming to pass without design, and without being foreseen or expected; coming by chance. 2. Coming without regularity; occasional; incidental." *Webster's New International Dictionary* (*2d ed.* 1952). Its antonyms are regular, systematic, periodic and certain.

At the outset it should be noted that if an employment is for a substantial period, it is not casual, because "casual," when applied to a relationship, connotes something relatively brief and passing. Decisions in this State prior to the 1919 amendment in effect support this view. *Mueller v. Oelkers Mfg. Co.,* 36 *N. J. L. J.* 117 (*C. P.* 1913); *Schaeffer v. De Grottola,* 85 *N. J. L.* 444 (*Sup. Ct.* 1914); *Scott v. Payne Brothers, Inc.,* 85 *N. J. L.* 446 (*Sup. Cl.* 1914). The 1919 amendment is even more confining, for it does not exclude all casual business employments merely because they are brief and passing, but rather excludes only such brief employments as result from an *occasion* arising by *chance* or *pure accident.* *Mullen v. Walker,* 105 *N. J. L.* 199 (*E. & A.* 1928); *Payne v. Henion Storage Warehouse,* 17 *N. J. Misc.* 404 (*Dept. Lab.* 1939); *Thompson v. G. Correale & Sons, Inc.,* 130 *N. J. L.* 431 (*Sup. Ct.* 1943); *Haytko v. William Crabb & Co.,* 17 *N. J. Super.* 95 (*Cty. Ct.* 1951), affirmed on opinion below, 21 *N. J. Super.* 330 (*App. Div.*

A248; 1952—A170; 1955—S24; 1956—S25; 1957—S29. Between 1951 and 1955 five bills, which were specifically designed to amend *N. J. S. A.* 34:15–36 by exscinding the casual employment exception, were not reported out of committee. See 1951—A507; 1952—A139; 1953—A-507; 1954—A147; 1955—A128. In 1936 the Legislature expressly declared that public employment under relief plans shall be deemed casual employment (*L.* 1936, *c.* 229, *p.* 718; *R. S.* 34:15–43.1) and in 1945 it expressly declared that forest fire wardens and forest fire fighters employed by the State of New Jersey shall not be deemed casual employees. *L.* 1945, *c.* 74, *p.* 392; *N. J. S. A.* 34:15–36.

1952); *Malloy v. Capitol Bakery*, 38 *N. J. Super.* 516 (*Cty. Ct.* 1955); see also 1 *Larson, Workmen's Compensation Law*, § 51.21 (1952); 2 *Schneider, Workmen's Compensation*, § 279(*d*) (*3d ed.* 1942). Hence consideration of the statutory exception should not be obscured by the fleeting nature of the engagement.

"Chance" and "accident" are variable concepts, depending upon perspective and context. To the individual affected, illness is a matter of chance, but from the standpoint of the nation it is certain that illness will overtake a substantial segment of the population. The victim of a fall or collision experiences chance or accident, but to a hospital which is prepared to receive him, the element of probability dominates the scene. And we take it that if the incidence of admissions should momentarily exceed the average, the hospital's need for temporary help could not be attributed to chance or accident. So also, although assureds under liability policies meet with accidents, yet to their carrier the resulting work load is not the product of chance or accident; and if a disaster should overtake an assured and induce the carrier to engage a special investigator, the occasion for the employment would not, from the view of the business operation, be attributable to chance or accident. The carrier would be unlucky, but that misfortune is an inherent attribute of the business venture, a calculated risk as to which anticipation merely proved imperfect.

Chance and accident permeate the industrial scene in varying senses or degrees. A chance meeting may yield a lucrative order, but surely the ensuing need for more employees could not be ascribed to chance or accident. *Cf. Mullen v. Walker, supra* (105 *N. J. L.* 199); *Thompson v. G. Correale & Sons, Inc., supra* (130 *N. J. L.* 431); but see *Ludwig v. Kirby*, 13 *N. J. Super.* 116 (*App. Div.* 1951); *Bosco v. Segal*, 4 *N. J. Misc.* 951 (*Sup. Ct.* 1926); *Van Nuys v. Levine*, 11 *N. J. Misc.* 309 (*C. P.* 1933). An employer may not expect a strike, but again the resulting occasion for temporary replacements is hardly the

product of chance or pure accident. *Krueger v. Merchants Transportation, Inc.,* 19 *N. J. Misc.* 379 (*Dept. Lab.* 1941). Disability of employees from illness or accident, a chance occurrence as to each of them, is regular and inevitable as to the employer. *Malloy v. Capitol Bakery, supra.* In some enterprises substitute employees are on call to fill in for absentees. It could not be maintained that the substitute is a regular employee on one day and a casual employee on another, depending upon the reason for the non-appearance of the permanent man. And if ten employees fall ill or suffer industrial injury, the occasion for the employment of others does not arise from chance or accident merely because it exceeds the average experience.

A business may be attended with risks so inevitable in the course of human experience that they must be and are contemplated and taken into account. The fortuitous character of the individual events is submerged in the inherent probability that they will occur in the total operation. So a business may have the inherent risk of spoilage or breakage. Though they be the immediate product of chance or accident for neither spoilage nor breakage is intended, yet their occurrence is a certainty figured in the cost of doing business. Such is the situation in the present case. Respondent handles bottles. Breakage is inevitable, and the proofs so establish. The amount of breakage will vary with the care exhibited in the operation. That on a given day the inevitable breakage exceeded the average does not transmute a probable occasion into one dominated by chance or accident. The situation is comparable to that of repairs and maintenance; the time and amount cannot be forecast precisely, but for like reason the employment they occasion is not casual. See 1 *Larson, Workmen's Compensation Law* (1952), § 51.23, *p.* 765; 2 *Schneider, Workmen's Compensation* (3d ed. 1942), § 279(L), *p.* 110.

Hence where, as here, the "occasion" for employment stems from a risk or hazard inherent in the business enterprise, where the business itself inevitably generates that risk

or hazard, the element of chance or accident is overwhelmed by the built-in probability that the occasion for employment will arise. The occasion, from the point of view of the total operation, is thoroughly regular. The most that can be said is that the expected business experience was poorer than had been hoped for.

We are not here concerned with situations in which the element of chance or pure accident is claimed to reside in some external force or event, *Cierpik v. Borough of Manasquan*, 2 *N. J. Super.* 110 (*App. Div.* 1949), but it is appropriate to note that in *Tettemer v. Slisz*, 131 *N. J. L.* 185 (*E. & A.* 1944), it was held that employment to rebuild a barn destroyed by fire was not casual. The court there concluded that (at *page* 186) "To provide housing for his herd is a regular part of his business, whether rebuilding a destroyed barn or building an additional one made necessary because of increased herds and enlarged business." It seems to us that business regularity is even more evident in a case such as the one before us, where the clearing of debris is a regular incident of the operation and a regular chore of the permanent staff. The decision to hire extra help to perform the work two days after the event was simply a business judgment that the total needs would thus be better served than by diverting permanent employees from other phases of the business activities.

The judgment of the Appellate Division is therefore reversed and the judgment of the County Court affirmed.

*For reversal*—Chief Justice WEINTRAUB, and Justices FRANCIS and PROCTOR—3.

*For affirmance*—Justices BURLING and JACOBS—2.