CARYL BETH CAICCO, PETITIONER-APPELLANT, v. TOTO BROTHERS, INC., RESPONDENT-RESPONDENT.

Argued January 8, 1973—Decided March 5, 1973.

*Mr. Franklin F. Feld* argued the cause for petitioner-appellant.

*Mr. Lewis P. Dolan, Jr.* argued the cause for respondent-respondent (*Messrs. Dolan & Dolan,* attorneys; *Mr. Robert T. Morgenstern,* on the brief).

The opinion of the court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. This is a workmen's compensation case in which the sole issue is whether petitioner Caicco's deceased husband was an independent contractor rather than an employee of respondent Toto Brothers, Inc. at the time of his accidental death. The Division of Workmen's Compensation found decedent to be an employee, and awarded petitioner compensation benefits. On appeal the County Court found to the contrary and dismissed petitioner's claim. The Appellate Division affirmed in an unreported *per curiam* opinion. This court granted certification. 62 *N. J.* 67 (1972).

Decedent Luigi Caicco was accidentally electrocuted on June 6, 1968 when the dump truck he was operating came in contact with high tension wires. The accident occurred at the job construction site of L. Zimmerman & Sons, Inc. on Woodbridge Avenue near the interchange of Routes 95 and 440 in Edison, New Jersey. At the time of the accident decedent was delivering a load of landfill for respondent which had subcontracted to supply landfill at the site.

The dump truck used by decedent was his own and he maintained it at his own expense. The landfill had been loaded on the truck at respondent's sand pit several miles from the job site. The loading was accomplished by means of a "caterpillar" loader operated by one of respondent's regular employees. Respondent's operations, from pick-up of loads to dumping at the construction site, were in effect from seven in the morning until lunchtime and from after lunch to three or three-thirty in the afternoon. This work schedule was in effect five days a week, exclusive of weekends and holidays. In addition to decedent's truck the hauling operation was serviced by four other dump trucks owned by respondent and driven by respondent's regular employees and by ten to fifteen "hired trucks" such as decedent's. The trucks took one of two routes to the job site where they would be directed by respondent's employees where to unload.

Decedent's employment with respondent was on a day-to-day basis and depended on such circumstances as weather conditions and available work. He was generally paid by the load but on occasion was paid by the hour. He could be fired at any time, but according to respondent, he could also quit at any time. He never used any employees of his own.

There was no written contract. However, as in the case of all of respondent's "hired drivers," decedent was required as a condition of employment to supply respondent with a letter in a form prescribed by respondent stating that he would be responsible for his own federal income taxes and that he was self-employed. Similarly, decedent was required to furnish respondent with proof of insurance for vehicle liability and workmen's compensation.

Decedent for his part held himself out as self-employed. Painted on the side of his truck was the name "C. L. Trucking," together with a telephone number. The name was not registered as a trade or business name, nor was the business incorporated. In addition to the dump truck decedent maintained a small pick-up truck for incidental use in his

business. Decedent maintained a telephone answering service, entertained business associates and sponsored a "Little League" team. His 1967 and 1968 income tax returns listed his occupation as that of a self-employed trucker, and, as such, he paid his income tax directly. Nothing was withheld by respondent. Decedent billed respondent and others for whom he did trucking by invoice in the name of "C. L. Trucking."

Beginning December 18, 1967 respondent became decedent's prime source of work and so remained until his death. From the commencement of that relationship about 81% of decedent's work-days were devoted to respondent and 19% to four other customers. About 85% of decedent's billings for work done during that period were to respondent.

The evidence as a whole justifies the inference, which we draw, that during the five to six month period of his association with respondent decedent made himself primarily available to respondent, and did trucking for others practically only when respondent had no work for him.

██ ██ We need not here recanvass the extensive consideration given to the criteria of employment vis-a-vis independent contractorship for workmen's compensation purposes in the Appellate Division opinion which we adopted in affirming recovery in *Tofani v. Lo Biondo Brothers Motor Express, Inc.*, 83 *N. J. Super.* 480 (1964), aff'd o.b. 43 *N. J.* 494 (1964), and in the dissenting opinion in the Appellate Division in *Marcus v. Eastern Agricultural Ass'n, Inc.*, 58 *N. J. Super.* 584, 596 (1959), which we adopted in reversing in that case, 32 *N. J.* 460 (1960). Both the "right to control" and "relative nature of the work" criteria, fully discussed in those decisions, here point strongly to a legal conclusion of employment and compensability.

Concerning respondent's right to control, it is evident that decedent had to adapt the details of his performance to the specifications of respondent's requirements. He had to appear at the loading point about 7:00 A.M., haul his load to the dump site; there coordinate the dumping of the load

with the activities of the other trucks which inferably were at the same time performing the same function for respondent as decedent, all under superintendence of respondent; take his lunch when convenient to respondent, and close out his day when respondent's work-day ended at about 3:30 P.M. There was thus both actual control and right of control of the details of the work in respondent, at least to the extent that such control of details was functionally relevant to respondent's requirements. See *Piantanida v. Bennett*, 17 *N. J.* 291, 294 (1955).

The "relative nature of the work" criterion of employment, 1A *Larson, The Law of Workmen's Compensation* (1967), §§ 43.52, 43.53, *Marcus, supra; Hannigan v. Goldfarb*, 53 *N. J. Super.* 190, 204–206 (App. Div. 1958); *Brower v. Rossmy*, 63 *N. J. Super.* 395 (App. Div. 1960), certif. den. 34 *N. J.* 65 (1961), is that which is most pertinent here. The hauling of materials performed through decedent's labor was a cog in the wheel of respondent's operation as a subcontractor of Zimmerman in as realistic a sense as the hauling being done by respondent's regular employees. Decedent had made himself substantially dependent on respondent, economically, during the period in question. The fact that he sought work from others during slack periods with respondent does not derogate from that fact. Nor does the circumstance that he maintained the superficial trappings of an independent businessman so long as substantial economic dependence on respondent and functional integration of operations persisted. See *Tofani, supra* (83 *N. J. Super.,* at 493). Compensation has frequently been awarded notwithstanding the employee maintained some sort of independent business concomitant with the relationship held to constitute employment in the particular case. See *Piantanida v. Bennett, supra; Glens Falls Indemnity Co. v. Clark,* 75 *Ga. App.* 453, 43 *S. E.* 2d 752 (Ct. App. 1947); *Schneider v. Village of Shickley,* 156 *Neb.* 683, 57 *N. W.* 2d 527 (Sup. Ct. 1953); *Christopherson v. Security State Bank of Oklee,* 256 *Minn.* 191, 97 *N. W.* 2d 649

(Sup. Ct. 1959); *Brademeyer v. Chickasaw Bldg. Co.,* 190 *Tenn.* 239, 229 *S. W.* 2d 323 (Sup. Ct. 1950).

The authorities sometimes allude to the factor as to whether the alleged employer, as opposed to the alleged employee, is better able to provide protection of the worker for occupational injury. *Larson, op. cit., supra* §§ 43.51, 43.52. This criterion is broadly useful in the overall approach but cannot be mechanically applied as a determinant in a particular case. In the present instance decedent was able to and did purchase workmen's compensation insurance, but it was useless for present purposes as it was issued to decedent as a self-employed individual.[1]

Respondent's insistence on decedent supplying it with various documents ostensibly indicative of an independent contractor relationship cannot affect the result if in substance, as we find the fact to be, the relationship was that of employment in the workmen's compensation context. *Tofani, supra* (83 *N. J. Super.* at 494).

We conclude that the basic relationship between the parties here is sufficiently similar to that which obtained in *Tofani, supra,* to make that decision controlling for recovery. The fact in *Tofani* that the workman's vehicle and, in effect, his personal services, were contracted exclusively to the hiring party for successive 30-day periods does not, for reasons already stated, constitute a sufficient distinction to warrant a difference in result.

In sum, the relationship of decedent to respondent was, on the whole, one such as evokes application of the underlying philosophy of the statute that injuries arising from labor rendered in an industrial enterprise are properly compensa-

---

[1]Had the insured under the policy been a corporation of which decedent was an employee, even though its principal owner and officer, there would have been coverage for the accident. See *Henk v. Eastern Air Taxi, Inc.,* 91 *N. J. Super.* 317 (App. Div. 1966), certif. den. 48 *N. J.* 110 (1966).

ble by the proprietors of that enterprise. See *Thornton v. Chamberlain Mfg. Corp.*, 62 *N. J.* 235 (1973).

The judgment of the Appellate Division is reversed and the decision of the Division of Workmen's Compensation reinstated.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN and Judges CONFORD and LEWIS—6.

*For affirmance*—None.