686 A.2d 368

MICHAEL KERTESZ, PETITIONER–APPELLANT, v.
BARRY L. KORSH, RESPONDENT–APPELLEE.

Superior Court of New Jersey
Appellate Division

Argued December 11, 1996—Decided December 26, 1996.

Before Judges SHEBELL, PAUL G. LEVY and BRAITHWAITE.

*Thomas R. Hilberth* argued the cause for appellant (Law Offices of *Thomas R. Hilberth,* attorney; *Mr. Hilberth,* of counsel; *R. Michael Mori,* on the brief).

*Francis T. Giuliano* argued the cause for respondent (*Mr. Giuliano,* of counsel; *Mr. Giuliano* and *David P. Kendall,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Petitioner, Michael Kertesz, appeals from the dismissal of his workers' compensation claim based on a finding that he was not an employee of respondent, Barry L. Korsh. Petitioner was injured while installing sheetrock on November 6, 1990. Respondent, however, denied that petitioner was an employee. We reverse.

According to the testimony of petitioner, on November 6, 1990, he fell while working on a job site to which he was directed by respondent, in Unit 16 of the Kips Ridge Townhouses in Verona. Petitioner testified that the day before the injury, respondent requested he go to work at that location to finish a sheetrocking job. Respondent was to pay petitioner $120 per day. He told

petitioner to bring his tools and truck. There was no writing or insignia on petitioner's truck. Petitioner worked for respondent "[a]bout three, four times a month." Petitioner had an independent business of installing sheetrock and employed others to work in his unincorporated business, but took this work with respondent because business was slow.

Petitioner went to the job site with Robert Pastor, another dry wall worker. Pastor testified: I spoke to "my employer," Barry Korsh, and was told to "call up Mikey [petitioner] and go with him to finish up the job." Petitioner and Pastor were each paid separately by personal checks from respondent. Petitioner, who was not fluent in English, testified through an interpreter that Pastor was considered the foreman and that Pastor told him what to do. Petitioner also testified that he took the job himself, rather than sending an employee, because work was slow. He did not work out of the union hall, nor did he receive a steady paycheck from any other source. Petitioner had a Workers' Compensation Insurance policy, naming himself as the insured, not a corporation or business entity.

Pastor, upon questioning by the judge, stated that respondent was putting up sheetrock on the whole project and that "I was working for Barry [respondent] and I was doing this job and then he needed someone ..., and we gave him [petitioner] a call." There were five people installing sheetrock at the job. Pastor stated it was respondent's responsibility to make sure that there were enough workers at the site to complete the job. The sheetrock, nails and supplies needed were provided by respondent. Unit 16 consisted of four levels. Petitioner explained it was customary for the builder to supply the large scaffold, the planking and the horses.

The judge, in rendering his decision, stated: petitioner "is a sheetrocker. He gets a call, puts up sheetrock supplied by the contractor, he brings his own tools because he's comfortable with it. You need it. He's in the business." The judge held

I can't make a finding that [petitioner] is an employee of [respondent]. I can't, since [the attorney for respondent] didn't produce [respondent], make any negative findings about [respondent].

. . . . . . . .

Mr. Pastor ... was less than believable as a witness. I find Mr. Pastor was highlighting certain facts and was testifying to attempt to help [petitioner]. [Petitioner] does not need that type of help. He's a good man. Unfortunately, he's not entitled to Workers' Compensation benefits as being an employee of [respondent].

. . . . . . . .

I find that from [petitioner's] own testimony he was an honest, truthful, and a nice man who was unfortunately injured and is unable to collect Workers' Compensation benefits because he thought more of the employees that he had than he did of himself. . . .

We gather from the above that the Judge of Compensation made a determination that petitioner was an independent contractor, and as such, was not entitled to Workers' Compensation benefits for his injury. A decision of the Division of Workers' Compensation is to be reviewed under the standard set forth in *Close v. Kordulak Brothers*, 44 *N.J.* 589, 210 *A.*2d 753 (1965). There, our Supreme Court stated

we now say the standard to govern appellate intervention ... is the same as that on an appeal in any nonjury case, i.e., "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record," considering "the proofs as a whole," with due regard to the opportunity of the one who heard the witnesses to judge of their credibility.

[*Id.* at 599, 210 *A.*2d 753 (quoting *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964)).]

The Court further explained that when reviewing an agency determination, "due regard [should be given] to the agency's expertise where such expertise is a pertinent factor." *Id.* at 599, 210 *A.*2d 753. We will reverse, however, when the finding and conclusions of the judge are inconsistent with the evidence and offend the interests of justice. *Perez v. Monmouth Cable Vision*, 278 *N.J.Super.* 275, 282, 650 *A.*2d 1025 (App.Div.1994), *certif. denied*, 140 *N.J.* 277, 658 *A.*2d 301 (1995).

Petitioner has the burden of proving this claim by a preponderance of the evidence. *Marcus v. Eastern Agricultural*

*Ass'n, Inc.,* 58 *N.J.Super.* 584, 587–88, 157 *A.*2d 3 (App.Div.1959), *rev'd on dissent,* 32 *N.J.* 460, 161 *A.*2d 247 (1960). Under *N.J.S.A.* 34:15–36, an employee "is synonymous with servant, and includes all natural persons ... who perform service for an employer for financial consideration...." The meaning of "employee" and "independent contractor" were explained in *Cappadonna v. Passaic Motors, Inc.,* 136 *N.J.L.* 299, 55 *A.*2d 462 (Sup.Ct.1947), *aff'd,* 137 *N.J.L.* 661, 61 *A.*2d 282 (E. & A.1948).

> An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.
>
> The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done.
>
> [*Id.* at 300, 55 *A.*2d 462 (quoting *Errickson v. F.W. Schwiers, Jr., Co.,* 108 *N.J.L.* 481, 483, 158 *A.* 482 (E. & A.1932)).]

■ The function of Workers' Compensation legislation is to require the consumer to ultimately bear the cost of injuries to workers through the cost of the service or product. *Marcus, supra,* 58 *N.J.Super.* at 603, 157 *A.*2d 3 (Conford, J.A.D., dissenting). Thus, whether a worker is an employee or an independent contractor is crucial to the determination of whether the worker should receive benefits and is to be determined through the application of two tests: the "control test" and the "relative nature of the work test." *See Tofani v. Lo Biondo Brothers Motor Express, Inc.,* 83 *N.J.Super.* 480, 484–92, 200 *A.*2d 493 (App.Div.), *aff'd. o.b.,* 43 *N.J.* 494, 205 *A.*2d 736 (1964).

■ In this case, it is the application of both the "control test" and the "relative nature of the work test" that leads us to the conclusion that petitioner is an employee, and thus entitled to receive Workers' Compensation benefits from respondent. The control test was the first test used by our courts to determine whether a worker was an employee or an independent contractor. *Brower v. Rossmy,* 63 *N.J.Super.* 395, 404, 164 *A.*2d 754 (App.Div. 1960), *certif. denied,* 34 *N.J.* 65, 167 *A.*2d 54 (1961). The test is

whether or not the employer had "control" over the worker, i.e., whether the employer had "the right to direct the manner in which the business or work shall be done, as well as the results to be accomplished." *Id.* at 404–05, 164 *A.*2d 754. It is significant that the "control test" is fulfilled so long as the employer has the right of control, even though the employer need not exercise actual control over the worker. *Id.* at 405, 164 *A.*2d 754.

After being called by respondent, petitioner went to the job site and with other workers undertook to complete the last unit on the project. Although petitioner had thirty years experience in sheetrocking and did not need instruction as to what needed to be done, there is no indication that respondent did not have the right to control petitioner. Pastor, who petitioner regarded as the foreman, testified that he worked for respondent. This testimony was unrebutted. Thus, respondent, through Pastor, appeared to exercise the right to control petitioner's activities.

 In any event, the absence of control does not preclude a finding that petitioner is an employee.

> A clear showing of control leads easily to the affirmative conclusion that an employer-employee relationship existed. But absence of control of details of the work, where not appropriate in the light of the skill of the employee in the circumstances under which the work is done, is not necessarily significant.
>
> [*Brower, supra,* 63 *N.J.Super.* at 404, 164 *A.*2d 754.]

As noted in *Marcus,* "there are various situations in which the control test does not emerge as the dispositive factor." *Marcus, supra,* 58 *N.J.Super.* at 597, 157 *A.*2d 3 (Conford, J.A.D., dissenting). In fact, this court has acknowledged that "[t]he courts have placed greater reliance upon the relative nature of the work test." *Pollack v. Pino's Formal Wear,* 253 *N.J.Super.* 397, 407, 601 *A.*2d 1190 (App.Div.), *certif. denied,* 130 *N.J.* 6, 611 *A.*2d 646 (1992).

> [W]here it is not in the nature of the work for the manner of its performance to be within the hiring party's direct control, the factor of control can obviously not be the critical one in the resolution of the case, but takes its place as only one of the various potential indicia of the relationship which must be balanced and weighed in determining what, under the totality of the circumstances, the character of that relationship really is. Thus, the requirement of control is sufficiently met where its extent is commensurate with that degree of supervision which is necessary and

appropriate, considering the type of work to be done and the capabilities of the particular person doing it. Patently, where the type of work requires little supervision over details for its proper prosecution and the person performing it is so experienced that instructions concerning such details would be superfluous, a degree of supervision no greater than that which is held to be normally consistent with an independent contractor status might be equally consistent with an employment relationship.

[*Marcus, supra,* 58 *N.J.Super.* at 597, 157 *A.*2d 3 (Conford, J.A.D., dissenting) (citations omitted).]

Where the control test is not accepted as the "dispositive factor," the focus then turns to the "relative nature of the work test" in deciding whether petitioner is an employee or an independent contractor. In *Hannigan v. Goldfarb,* 53 *N.J.Super.* 190, 147 *A.*2d 56 (App.Div.1958), we recognized that "[t]he right to control is not 'the underlying principle that really tips the scales in close situations.' " *Id.* at 204, 147 *A.*2d 56 (quoting 1C Arthur Larson, *Workmen's Compensation Law* § 43.30 at 8–10). Rather, " 'what actually influences the decision ...' is 'the nature of the claimant's work in relation to the regular business of the employer.' " *Id.* at 204–05, 147 *A.*2d 56 (quoting Larson, *supra,* § 43.50). This "test [is] more realistic to the objects and purposes of workmen's compensation and relevant in [certain] circumstances" and although the control factor is still utilized in the test, it "is minimized when certain fact patterns appear." *Brower, supra,* 63 *N.J.Super.* at 404, 164 *A.*2d 754.

■ The "relative nature of the work test" was characterized by this court in *Marcus, supra,* as follows:

· The test ... [is] essentially an economic and functional one, and the determinative criteria not the inconclusive details of the arrangement between the parties, but rather the extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business.

[*Marcus, supra,* 58 *N.J.Super.* at 603, 157 *A.*2d 3 (Conford, J.A.D., dissenting).]

The "relative nature of the work test," was thereafter adopted by our Supreme Court in *Caicco v. Toto Brothers, Inc.,* 62 *N.J.* 305, 310, 301 *A.*2d 143 (1973). Under this test it is necessary to analyze the nature of the employer's business and decide whether " 'the work done by the petitioner was an integral part of the

regular business of respondent,' " as well as whether the worker is economically dependent upon the employer. *Smith v. E.T.L. Enterprises,* 155 *N.J.Super.* 343, 352, 382 *A.*2d 939 (App.Div.1978)(quoting *Rossnagle v. Capra,* 127 *N.J.Super.* 507, 517, 318 *A.*2d 25 (App.Div.1973), *aff'd o.b.,* 64 *N.J.* 549, 318 *A.*2d 20 (1974)).

In the present case, perhaps because respondent did not testify, the judge did not analyze the nature of respondent's business. However, the facts regarding respondent's business may be gleaned from the testimony of both petitioner and Pastor. Respondent contracted to sheetrock the entire project, and petitioner was hired to work from time to time with others to do the sheetrocking work. Both Pastor and petitioner worked for respondent whenever he needed them. Pastor had been working on the job on and off since its inception and was considered by petitioner to be the foreman on the job. Petitioner worked for respondent about three to four times a month. It was respondent's responsibility to ensure that enough workers were on the job. Both petitioner and Pastor were paid separately by check for the time that they themselves worked.

The judge should also have considered the nature of respondent's business and whether petitioner was an integral part of that business. Respondent obtained the job and required additional workers to finish the work that he had contracted to perform. Thus, he enlisted petitioner to be a worker. Respondent involved himself in the sheetrocking business by contracting to sheetrock the project. Respondent supplied the workers with the necessary materials, including the sheetrock and nails which he purchased, and the scaffolding and planking from which petitioner fell. Respondent was dependent on workers such as petitioner to be available when needed to fulfill the contract. Moreover, he employed petitioner three to four times a month.

Mounting sheetrock is an occupation that requires experience and expertise. Since petitioner had been in the trade for many years, he did not need substantial direction as he was familiar with

what to do. Therefore, the nature of petitioner's work, given his background in mounting sheetrock, corresponded with the nature of the business undertaken by respondent. These factors all add up to the conclusion that petitioner was in the employ of respondent at the time of his accident and injury.

Nonetheless, respondent argues that because petitioner characterized himself as "an independent" and was in the business of sheetrocking for himself that it prevents a determination that petitioner was an employee. However, upon application of the facts to the "relative nature of the work test," the factors respondent cites are not sufficient to support a finding that petitioner was an independent contractor.

A review of the facts in *Pollack, supra* is illustrative. After setting out the factors in the "relative nature of the work test," we then applied those factors to the facts in that case. We stated:

> Furthermore, Pollack was Polgardy's employee even under the relative nature of the work test. Petitioner established Pollack's dependency on Polgardy. Pollack asked Polgardy about the availability of work because his own business was floundering. Pollack was in need of money and Polgardy hired Pollack at the rate of $15 per hour. Furthermore, the work that Pollack performed was an integral part of Polgardy's business. Polgardy's business involved the installation of dry-cleaning machinery and Pollack installed a gas-fired burner, which was a necessary component of the dry-cleaning machinery.
>
> [*Pollack, supra,* 253 *N.J.Super.* at 409, 601 *A.*2d 1190.]

Here, as in *Pollack, supra,* petitioner needed the work since business was slow; respondent hired petitioner at the rate of $120 per day; he worked for respondent three to four times that month; and petitioner was performing an integral part of the business respondent was under contract to perform. A finding of employment is compelled considering the facts presented to the Judge of Compensation.

■■■■■ *N.J.S.A.* 34:15–36 barring casual employees from receiving Workers' Compensation benefits does not apply here. The extent or duration of petitioner's employment is irrelevant. *Graham v. Green,* 54 *N.J.Super.* 397, 402, 148 *A.*2d 862 (App.Div.), *rev'd on other grounds,* 31 *N.J.* 207, 156 *A.*2d 241 (1959). Whether the work arose by chance or was purely accidental is the

relevant inquiry. *Ibid.* The Supreme Court, in *Graham, supra,* stated that *N.J.S.A.* 34:15–36 "does not exclude all casual business employments merely because they are brief and passing, but rather excludes only such brief employments as result from an occasion arising by chance or pure accident." *Graham, supra,* 31 *N.J.* at 211, 156 *A.*2d 241 (emphasis omitted). Here, petitioner's employment cannot be considered accidental as it was in the regular course of respondent's business. In addition, respondent not only specifically requested that petitioner work on the day of the accident, but petitioner worked for respondent three to four times a month.

Our conclusion also finds support in the objectives of the Workers' Compensation legislation and the liberal construction that it commands. As stated, a purpose of the legislation is to place the cost of injuries to workers on the ultimate consumer through the price of the goods or services. *Marcus, supra,* 58 *N.J.Super.* at 603, 157 *A.*2d 3 (Conford, J.A.D., dissenting). This legislation should be construed liberally, "in order to bring as many cases as possible within the coverage of the act." *Smith, supra,* 155 *N.J.Super.* at 349, 382 *A.*2d 939. Therefore, since petitioner's work fell within the regular and continuing course of respondent's business, and because petitioner's unincorporated business was not a "separate route through which his own costs of industrial accident can be channelled," our determination, that petitioner was an employee and thus deserving of benefits, fosters the objective of passing on the cost of the worker's injury to the ultimate consumer. *Marcus, supra,* 58 *N.J.Super.* at 603, 157 *A.*2d 3 (Conford, J.A.D., dissenting)(citation omitted).

We, therefore, reverse and remand. Petitioner has established that he was an employee of respondent at the time of his injury and thus, is eligible for Workers' Compensation benefits. An appropriate judgment in that regard shall be entered by the Judge of Compensation, and the matter shall be promptly scheduled for a hearing to determine benefits.

Reversed and remanded.