697 A.2d 977

RE/MAX OF NEW JERSEY, INC., A CORPORATION OF THE STATE OF NEW JERSEY; RE/MAX RESULTS REAL ESTATE, INC.; LADEN CORP. T/A RE/MAX REALTY EXPERTS; RE/MAX FUTURE REAL ESTATE PROFESSIONALS, INC.; O. HERRARA, INC., T/A VILLA REALTORS, PLAINTIFFS, v. WAUSAU INSURANCE COMPANIES; AETNA LIFE & CASUALTY AND NEW JERSEY RE–INSURANCE COMPANY AND PENNSYLVANIA NATIONAL INSURANCE COMPANY, DEFENDANTS, v. THE TRAVELERS INSURANCE CO., PLAINTIFF, v. COMPREHENSIVE REALTY CO., RE/MAX TRI COUNTY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Atlantic County

Decided May 9, 1997.

*Mark Schwartz* for plaintiffs (*McAllister, Westmoreland, Vesper Schwartz, Hyber & White*)

*John T. Coyne* for defendant, New Jersey Re–Insurance Co. (*McElroy, Deutsch & Mulvaney*)

*Jonathan M. Kuller* for defendant Travelers Insurance Co., Aetna Life & Casualty, Employers Insurance of Wausau, A Mutual Company (*Law Office of Alan Wasserman*)

*Robert M. Kaplan* for defendant Pennsylvania National Insurance Company (*Margolis Edelstein*)

GIBSON, J.S.C.

These are consolidated cases in which Re/Max of New Jersey and several of its franchisees seek a declaratory judgment that their sales agents be deemed independent contractors for the purpose of calculating workers' compensation premiums. Defendants are various insurance carriers which have supplied workers' compensation coverage to plaintiffs. The carriers contend that the agents should be deemed employees. This issue appears to be one of first impression and is before the court procedurally based on stipulated facts and cross motions for summary judgment.

## FINDINGS OF FACT

Plaintiff, Re/Max of New Jersey, Inc. (hereafter Re/Max) is a subfranchiser of Re/Max International Inc. The various Re/Max offices in New Jersey are franchisees of Re/Max of New Jersey. All are engaged in the business of providing real estate services to the public. Defendants, Employers Insurance of Wausau, Aetna Life & Casualty, Travelers Insurance Company, New Jersey Re-Insurance Company and Pennsylvania Insurance Company (hereafter carriers) are the insurance companies which service the Re/Max offices. At some point, each of those carriers determined that Re/Max agents should be considered employees for purposes of the workers' compensation act and began to charge premiums accordingly. Plaintiffs objected and contended that the agents were independent contractors. Unable to resolve those differences, this action was instituted.

Each of the Re/Max offices in New Jersey consists of a licensed broker and at least one sales agent. As part of the franchise agreement, all Re/Max brokers are required to have their sales

agents sign an "Independent Contractor Agreement" which sets forth their rights and obligations and contains a variety of provisions intended to underscore the agents' independent contractor status. Included among those provisions is the agent's right to set his own hours, engage in his own advertising and to enjoy the benefits of the so-called "100% Concept". Under the 100% Concept, Re/Max agents are entitled to retain the entire commission earned from any sale rather than splitting the commission with the broker, as is common in other real estate agencies. In consideration of the agent's services and the fees paid, the broker agrees to make available, on a non-exclusive basis, office and desk space plus access to listings, forms, telephone and other means of communication.

Although Re/Max agents are not required to share a commission, the agents are obligated to pay to the broker a variety of fees and expenses. Those sums include a security deposit, a one-time initiation fee and a monthly management fee representing a proportionate share of the office expenses. The office expenses include so-called fixed expenses (proportionately shared among the agents), miscellaneous shared expenses and finally personal expenses such as postage and advertising. The actual amount of the monthly expenses may vary from agent to agent and from month to month. At times, individual agents may not generate enough sales to meet their monthly expense obligation. To accommodate those situations, Re/Max offers an Alternative Payment Program which allows agents to reduce the amount they need to pay toward monthly expenses by taking an advance against future commissions.

Re/Max agents generally work full time, but they are not compelled to spend any minimum amount of "floor time" in the office. They also supply their own vehicle and control their own advertising but all advertising must include the Re/Max logo and name and conform with other guidelines. Franchisees hold regular meetings to inform agents regarding real estate topics, but attendance is voluntary. Agents are also required to maintain

their personal appearance and provide dependable, efficient, courteous and professional service and Re/Max retains the right to immediately terminate any agent for cause; either party may terminate without cause upon sixty days written notice.

All Re/Max agents agree to work exclusively for the Re/Max office, to maintain loyalty to Re/Max and to abide by the various statutory requirements of the Real Estate Brokers and Salesman Act, *N.J.S.A.* 45:15–1 through –29.5. In accordance with that Act, it is only the broker that can bring an action to collect a commission. Although plaintiffs contend that the broker simply acts as a conduit, the consequences are the same; that is, no agent has the ability to enforce a commission agreement without the help of the broker. Finally, although the actual control exercised varies among offices, the agreement gives the broker the right to supervise and control the performance of every agent.

## CONCLUSIONS OF LAW

Before addressing the merits, it should be noted that the purpose of a declaratory judgment is to end uncertainty about the legal rights and duties of parties to litigation. *N.J. Assoc. for Retarded Citizens v. N.J. Dept. of Human Services,* 89 *N.J.* 234, 241, 445 *A.2d* 704 (1982). Although courts will not render an advisory opinion or function in the abstract, declaratory relief is appropriate when there is an actual dispute between parties and those parties have a sufficient stake in the outcome. Both of those elements are satisfied here and all parties agree that relief under the Declaratory Judgment Act is appropriate. *N.J.S.A.* 2A:16–50 to 62.

As for the merits, given the fact that the financial benefits under the workers' compensation act extend only to employees, *N.J.S.A.* 34:15–1, the question of whether a Re/Max sales agent is an employee or an independent contractor is crucial to the determination of whether the brokers are required to maintain coverage and, in turn, whether these carriers may legitimately include the agents in calculating premiums. *Kertesz v. Korsh,* 296

*N.J.Super.* 146, 152, 686 *A.*2d 368 (App.Div.1996). *See generally,* 38 New Jersey Practice, *Worker's Compensation Law* § 5.1 through § 5.9 (1994). Although there are no reported cases which have decided this issue, this court is not without guidance. For example, under the Worker's Compensation Act, the term "employee" is given a broad definition and includes "all natural persons . . . who perform services for an employer for financial consideration." *N.J.S.A.* 34:15–36. It is also clear that the term "employee" is to be liberally construed so as to bring as many persons as possible within the coverage of the Act. *Hannigan v. Goldfarb,* 53 *N.J.Super.* 190, 195, 147 *A.*2d 56 (App.Div.1958). As a consequence, a variety of working relationships have been held to be covered by the Act, including those not necessarily confined to traditional employment settings. *Ibid; Marcus v. Eastern Agricultural Ass'n, Inc.,* 58 *N.J.Super.* 584, 590, 157 *A.*2d 3 (App.Div.1959), *rev'd on dissent,* 32 *N.J.* 460, 161 *A.*2d 247 (1960).

In addressing the employee/independent contractor issue in other factual settings, our courts have applied two tests; the so-called "control test" and the "relative nature of the work test." *Ibid; Tofani v. Lo Biondo Brothers Motor Express, Inc.,* 83 *N.J.Super.* 480, 484–92, 200 *A.*2d 493 (App.Div.), *aff'd o.b.,* 43 *N.J.* 494, 205 *A.*2d 736 (1964). The "control test" is the older of the two and, in general, is based on the notion that when an individual is an independent contractor, that person carries on a separate business and contracts to do work according to his or her own methods, without being subject to the control of an employer, except as to the results. When the relation is that of employer and employee, on the other hand, the employer not only retains the right to control *what* is done but also to direct the *manner* in which the work is completed. *Kertesz v. Korsh, supra,* 296 *N.J.Super.* at 152, 686 *A.*2d 368 citing *Cappadonna v. Passaic Motors, Inc.,* 136 *N.J.L.* 299, 55 *A.*2d 462 (N.J.Sup.1947), *aff'd,* 137 *N.J.L.* 661, 61 *A.*2d 282 (N.J.Err. & App.1948). Significantly, our courts have held that the "control test" is satisfied so long as the employer has the right of control, and it is not necessary to prove

its actual exercise. *Brower v. Rossmy,* 63 *N.J.Super.* 395, 405, 164 *A.*2d 754 (App.Div.1960), *certif. denied,* 34 *N.J.* 65, 167 *A.*2d 54 (1961).

■ As for the "relative nature of the work test", not only is it the more modern of the two, it is also believed to be the more realistic test in terms of the objectives of the workers compensation act, *Kertesz v. Korsh, supra,* 296 *N.J.Super.* at 154, 686 *A.*2d 368 Larson, *Workmen's Compensation Law,* § 43.50 at 8–10. As characterized by the Appellate Division dissent, adopted by the Supreme Court.

> The test ... [is] essentially an economic and functional one, and the determative *criteria* [are] not the inclusive details of the arrangement between the parties, but rather the extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business.
>
> [*Marcus v. Eastern Agricultural Ass'n, Inc., supra,* 58 *N.J.Super.* at 603, 157 *A.*2d 3 (Conford, J.A.D. dissenting).]

A critical focus is the workers' degree of independence and whether his or her work is an integral part of the regular business of someone else. *Kertesz v. Korsh, supra,* 296 *N.J.Super.* at 154, 686 *A.*2d 368.

■ In assessing the relationship of Re/Max agents under the "control test", I am sensitive to the fact that the brokers and the agents have themselves defined their relationship as independent contractors and their agreement includes a variety of provisions which purport to underscore that point. For example, the agents are on a 100% commission basis, they set their own hours and conduct their own advertising. On the other hand, the agents must comply with an elaborate set of guidelines and quality controls. Also, although agents handle their own advertising, the advertising must contain the Re/Max logo and must depict them as part of the Re/Max organization. Even the written contract makes it clear that the agents are subject to the supervision and control of Re/Max and/or their local broker. And, of course, it is the Re/Max brokers that supply the listings, office, the phones, and other services needed to implement an agent's sales efforts.

Thus, although workers and employers may make whatever contractual arrangement they wish, any arrangement which thwarts the purposes of the workers' compensation legislation by manipulating labels will not be sanctioned. *Marcus v. Eastern Agricultural Ass'n, Inc., supra,* 58 *N.J.Super.* at 594, 157 *A.*2d 3.

■ Similar reasoning was applied by the court in *Hannigan v. Goldfarb, supra,* 53 *N.J.Super.* at 196, 147 *A.*2d 56. In that case, the court concluded that a taxicab driver who paid a set fee to operate a cab on his own for twelve hour shifts, but who did not own the cab, was nevertheless an employee for the purposes the Workers Compensation Act. The court concluded that since the driver was operating the cab through the defendant association, was identified with the association by its logo and received his fees through a central office which managed the overall operation, there was sufficient control to justify labeling the driver an employee. *Ibid.* The court reached the same conclusion by applying the relative nature of the work test. *Id.* at 204–208, 147 *A.*2d 56. In *Tofani v. Lo Biondo Brothers Motor Express, Inc., supra,* the court applied a similar analysis to conclude that a decedent who owned his own tractor, leased it to the defendant and drove it while hauling a trailer owned by defendant was the defendants employee for coverage purposes. Most recently, the Appellate Division concluded that even though a sheetrocker operated his own business, he was nevertheless an employee of a real estate developer for workers compensation purposes where that developer hired the sheetrocker three or four times a month, supervised the work through his foreman and supplied the materials. *Kertesz v. Korsh, supra,* 296 *N.J.Super.* at 157, 686 *A.*2d 368. Although the worker brought his own tools to the job, it was the builder who had the right to control the nature of the work. *Id.* at 153, 686 *A.*2d 368. Based on the above, I am satisfied that Re/Max agents would be considered employees under the control test.

■ Even if this court were to conclude that the "control test" supported plaintiffs' position or that the test was inconclusive, the

absence of control would not preclude a finding that these agents are employees. *Ibid.* A clear showing of control will, of course, lead to the conclusion that an employer-employee relationship existed. However, given the variety of situations in which control is not dispositive, our courts have placed greater reliance upon the "relative nature of the work test". *Pollack v. Pino's Formal Wear,* 253 *N.J.Super.* 397, 407, 601 *A.*2d 1190 (App.Div.), *certif. denied,* 130 *N.J.* 6, 611 *A.*2d 646 (1992). An application of this test to the instant case further supports the conclusion that Re/Max agents should be considered employees for workers' compensation purposes. As noted, under this test, one looks to the extent of the economic dependence of the worker upon the business served, as well as the relationship of the nature of the person's work to the operation of the business as a whole. *Marcus v. Eastern Agricultural Ass'n, Inc.,* 58 *N.J.Super.* at 603, 157 *A.*2d 3 (Conford, J.A.D. dissenting). Stated differently, the key question is whether the nature of the work done by the individual is an integral part of the regular business of the employer and/or whether the worker is economically dependent on that business. *Kertesz v. Korsh, supra,* 296 *N.J.Super.* at 154, 686 *A.*2d 368, 1C Larson, *Workmen's Compensation Law,* supra. In the case at bar, there is no question that the agents are economically dependent on the broker. The broker provides the listings, the office, the equipment and the support staff. In addition, the agents work for the Re/Max office exclusively. Beyond that, the agents' dependence has a statutory basis. For example, under *N.J.S.A.* 45:15–3, it is only the broker that can lawfully enforce a client's obligation to pay a commission. In sum, Re/Max agents do not have the ability to act independently.

In addition to the two tests discussed above, New Jersey Reinsurance Company, has raised a contractual argument based on language in the insurance policy. For example, paragraph 5(c)(2) of the standard form policy authorizes the carrier to calculate premiums based on payroll and to include all other persons engaged in work that "could make" the carrier liable for workers' compensation benefits. It is the carrier's contention that

such a classification is quite broad and would include the Re/Max sales agents regardless of whether they are independent contractors. In view of the traditionally strict reading applied to insurance contracts, however, this court chooses not to rely on this argument, and given the above analysis, it need not do so.

## CONCLUSION

In view of the broad definition of "employee" under the workers' compensation act, the liberality with which coverage issues are to be treated, and the weight of the case law supporting a broader application of the Act, I am satisfied that Re/Max sales agents should be considered employees for these purposes. The nature of the Re/Max operations gives the office managers sufficient control over the sales people to obviate a claim of independence. More importantly, the integration of the agents' work with the business of the brokers, both economically and from an operational perspective, makes any further claim of independence difficult to sustain.[1]

Judgment will therefore be entered on behalf of defendants and against plaintiffs.

---

[1] Despite the fact that Re/Max and its franchisees are the plaintiffs, they contend that the carriers have the burden of proof and cite *Aetna Ins. v. Trans American*, 261 *N.J.Super.* 316, 328, 618 A.2d 906 (App.Div.1993). In *Aetna*, however, not only was the carrier the plaintiff, it also conceded the independent contractor status of the workers. In any event, the outcome of this case does not hinge on that issue. This court would have reached the same conclusion regardless of which party had the burden of proof.