721 A.2d 1007

RICHARD CONLEY, PETITIONER–APPELLANT, v. OLIVER
AND COMPANY, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 7, 1998—Decided December 31, 1998.

Before Judges HAVEY, SKILLMAN and LESEMANN.

*Marriott Casagrande Callahan & Perri*, attorneys for appellant (*Louis J. Casagrande*, on the brief).

*Cooper Perskie April Niedelman Wagenheim & Levenson*, attorneys for respondent (*Michael Gross*, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This is an appeal from an order of the Division of Workers' Compensation which dismissed petitioner's claim for benefits on the ground that he was an independent contractor rather than an employee.

The relevant facts are undisputed. Petitioner earns his livelihood by performing temporary services as an insurance claims adjuster for insurance companies and claims adjustment companies when a catastrophe such as a hurricane generates so many claims that a company's regular employees are unable to handle all its work. In the claims adjustment field, such persons are called "storm troopers."

In December of 1992, shortly after a severe wind storm struck the New Jersey coast causing damage to a substantial number of homes, petitioner entered into an agreement with respondent, an independent insurance adjusting company, to work on evaluating and adjusting property damage claims resulting from the storm. Respondent agreed to pay petitioner 60% of the fees received for claims he processed. Although petitioner was responsible for paying most of his own business expenses, respondent provided him with office space and a telephone. Respondent treated peti-

tioner as an independent contractor and did not withhold income tax or deduct social security from the amounts paid to him.

When petitioner began this work, respondent gave him a schedule of prices of materials, which he was required to use in evaluating claims. Each morning, petitioner began his work day by driving to respondent's office to deliver claim forms that he had completed the day before, to make appointments with the claimants whose houses he planned to inspect that day, and to discuss with his superiors, Chad Oliver and Richard Vitullo, any questions concerning the claims assigned to him. In addition, petitioner would generally call Oliver or Vitullo at least once during the afternoon to discuss any problems that arose during the day. When petitioner completed work on a claim, he was required to submit the file to Oliver for review. If Oliver had any questions, he would discuss them with petitioner, and if Oliver approved a proposed settlement, he would transmit the claim forms to the insurance company. The insurance companies generally would communicate with Oliver or Vitullo rather than petitioner if they had any question regarding the proposed settlement of a claim.

From December 21, 1992 until May 6, 1993, the day of the accident which resulted in his workers compensation claim, petitioner worked full-time for respondent. During this period, he processed approximately 350 claims, for which he was paid a total of $45,190.50. Although respondent disputed petitioner's assertion that there is an unwritten rule that a "storm trooper" only works for one adjusting company at a time, respondent admitted that it gave petitioner so many files during the first three months after the storm that he would not have had time to work for anyone else.

The procedures petitioner followed in evaluating and adjusting claims were essentially the same as those of the claims adjusters respondent employs on a regular basis. However, the regular employees handled a smaller volume of claims than petitioner and were paid a fixed salary rather than a percentage of the fees they generated. In addition, respondent's regular employees work on

various types of claims while petitioner worked almost exclusively on claims arising out of the December 1992 storm.

In ruling that petitioner was an independent contractor rather than an employee, the Judge of Compensation concluded that petitioner was not subject to respondent's control in handling the claims assigned to him. The Judge also concluded that even though petitioner's work as a claims adjuster was an integral part of respondent's [regular] business, he did not have a substantial economic dependence upon respondent. We reverse.

■ Under the Workers' Compensation Act, the term "employee" is defined as "synonymous with servant, and includes all natural persons ... who perform service for an employer for financial consideration, exclusive of ... casual employment." *N.J.S.A.* 34:15–36. "This is a broad definition which includes relationships not ordinarily considered to constitute employment." *Hannigan v. Goldfarb,* 53 *N.J.Super.* 190, 195, 147 *A.*2d 56 (App.Div.1958). Thus, the Workers' Compensation Act "is construed to bring as many cases as possible within its coverage." *Ibid.*

■ Our courts have utilized two tests to determine whether a person is an employee or an independent contractor: (1) the "right to control" test and (2) the "relative nature of the work" test. *Caicco v. Toto Bros., Inc.,* 62 *N.J.* 305, 309, 301 *A.*2d 143 (1973). "These two tests are basically designed to draw a distinction between those occupations which are properly characterized as separate enterprises and those which are in fact an integral part of the employer's regular business." *Pollack v. Pino's Formal Wear & Tailoring,* 253 *N.J.Super.* 397, 407, 601 *A.*2d 1190 (App. Div.), *certif. denied,* 130 *N.J.* 6, 611 *Å.*2d 646 (1992). In recent years "[t]he courts have placed greater reliance upon the relative nature of the work test" than upon the control test. *Ibid.; see Kertesz v. Korsh,* 296 *N.J.Super.* 146, 154, 686 *A.*2d 368 (App.Div. 1996); *Hannigan v. Goldfarb, supra,* 53 *N.J.Super.* at 204–06, 147 *A.*2d 56.

Both the "right to control" and the "relative nature of the work" tests point strongly to the conclusion that petitioner was respondent's employee rather than an independent contractor.

■ The "right to control" test may be satisfied even though the employer does not control the details of an employee's performance of his or her work. As Judge Conford pointed out in his dissenting opinion in *Marcus v. Eastern Agric. Ass'n, Inc.*, 58 *N.J.Super.* 584, 596–605, 157 *A.*2d 3 (App.Div.1959), which was subsequently adopted by the Supreme Court, 32 *N.J.* 460, 161 *A.*2d 247 (1960):

[T]he requirement of control is sufficiently met where its extent is commensurate with that degree of supervision which is necessary and appropriate, considering the type of work to be done and the capabilities of the particular person doing it. Patently, where the type of work requires little supervision over details for its proper prosecution and the person performing it is so experienced that instructions concerning such details would be superfluous, a degree of supervision no greater than that which is held to be normally consistent with an independent contractor status might be equally consistent with an employment relationship.

[58 *N.J.Super.* at 597, 157 *A.*2d 3 (citations omitted).]

*See also Caicco v. Toto Bros., Inc., supra,* 62 *N.J.* at 309–10, 301 *A.*2d 143.

■ Respondent had the right to exercise and in fact did exercise sufficient control over petitioner's work to satisfy the "right to control" test as explained in *Marcus.* To be sure, petitioner generally set his own schedule, determining which claimants' homes he would inspect each day and how much time was required to evaluate a claim. Petitioner also exercised considerable discretion in evaluating claims. However, respondent provided petitioner with the price schedules he was required to use in evaluating claims, and its supervisory employees reviewed his claim forms and tentative agreements with claimants as a matter of course before sending them to the insurance companies for final approval and payment. Moreover, petitioner was required to spend time in respondent's office each morning and to communicate by telephone with supervisors at other times in the day. And even though petitioner generally set his own work schedule, respondent would sometimes direct him to give priority to particu-

lar claims. Significantly, respondent exercised substantially the same supervision over petitioner as its regularly employed claims adjusters. Therefore, respondent exercised "that degree of supervision [over petitioner] which [was] necessary and appropriate, considering the type of work to be done and the capabilities of the particular person doing it." *Marcus, supra,* 58 *N.J.Super.* at 597, 157 *A.*2d 3.

Petitioner's work for respondent also satisfied the "relative nature of the work" test. In applying this test, a court must determine "whether the work done by the petitioner was an integral part of the regular business of respondent," *Rossnagle v. Capra,* 127 *N.J.Super.* 507, 517, 318 *A.*2d 25 (App.Div.1973), *aff'd o.b.,* 64 *N.J.* 549, 318 *A.*2d 20 (1974), and whether petitioner had a "substantial economic dependence on respondent," *Caicco v. Toto Bros., Inc., supra,* 62 *N.J.* at 310, 301 *A.*2d 143. "[T]he determinative criteria [are] not the inconclusive details of the arrangement between the parties" but rather "whether or not the work is a part of the regular business of the employer." *Marcus, supra,* 58 *N.J.Super.* at 603, 157 *A.*2d 3; *see also Re/Max of New Jersey, Inc. v. Wausau Ins. Cos.,* 304 *N.J.Super.* 59, 697 *A.*2d 977 (Ch.Div. 1997), *aff'd,* 316 *N.J.Super.* 514, 720 *A.*2d 658 (App.Div.1998); *Kertesz v. Korsh, supra,* 296 *N.J.Super.* 146, 686 *A.*2d 368.

Petitioner's work was clearly an integral part of respondent's regular business. Respondent is an independent claims adjusting company, and petitioner was hired on a temporary basis to evaluate and adjust claims arising out of a catastrophic wind storm. He performed this work in substantially the same manner as respondent's regular salaried employees, even sharing office space and participating in meetings with those employees.

It is also clear that petitioner had a substantial economic dependence upon respondent. For a four and one-half month period, petitioner worked exclusively for respondent. Consequently, the money petitioner received from respondent represented his sole means of support during that period. This relationship created a substantial economic dependence even though petition-

er's employment was only temporary. *See Kertesz v. Korsh, supra,* 296 *N.J.Super.* at 156, 686 *A.*2d 368; *Pollack v. Pino's Formal Wear & Tailoring, supra,* 253 *N.J.Super.* at 409, 601 *A.*2d 1190; *see also Graham v. Green,* 31 *N.J.* 207, 210–12, 156 *A.*2d 241 (1959).

Petitioner's relationship to respondent was similar in some respects to the employer-employee relationship found in *Caicco v. Toto Bros., Inc., supra,* 62 *N.J.* 305, 301 *A.*2d 143. In that case, petitioner's deceased husband had owned a dump truck and held himself out as a self-employed independent contractor. Respondent's business consisted of transporting sand from a sand pit it owned to building sites. Respondent owned four dump trucks but also used "hired trucks" such as the one owned by decedent to conduct its business. During the six months before the accident which resulted in his death, the decedent worked for respondent on a regular basis, deriving 85% of his income from that source. Although the decedent viewed himself as self-employed for other purposes, such as the payment of federal income taxes, the Court concluded that he was an "employee" within the intent of the Workers' Compensation Act. The Court found the "relative nature of the work" test to be "most pertinent" in determining the decedent's status. *Id.* at 310, 301 *A.*2d 143. The Court concluded that by hauling materials from the sand pit to construction sites in the same manner as respondent's regular employees, decedent "was a cog in the wheel of respondent's operation." *Ibid.* The Court also concluded that even though petitioner maintained "the superficial trappings of an independent businessman," he "made himself substantially dependent on respondent, economically, during the period in question." *Ibid.*

We reach the same conclusion in this case. Even though petitioner maintained some of the trappings of an independent businessman during the four and one-half months he worked for respondent, his work was an integral part of respondent's regular business and he had a substantial economic dependence upon respondent.

Accordingly, the order dismissing petitioner's claim is reversed and the matter is remanded to the Division of Workers' Compensation to hear the claim.