128 N.J. Super. 504 (1974)
320 A.2d 522
MARY RUTHERFORD, INDIVIDUALLY AND AS ADMINISTRATRIX, PLAINTIFF,
v.
MODERN TRANSPORTATION COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 20, 1974.
*505 Mr. Ira J. Zarin for plaintiff (Messrs. Zarin and Maran, attorneys).
Mr. Neil Reiseman for defendant (Messrs. Conway, Reiseman and Michaels, attorneys).
LARNER, A.J.S.C.
Plaintiff as administratrix, both general and ad prosequendum, brings this wrongful death action for damages resulting from the death of her husband Roosevelt Rutherford as a result of an accident which occurred on October 9, 1970. One of the defendants against whom negligence is alleged is Modern Transportation Co. This defendant has asserted as one of its defenses that decedent Roosevelt Rutherford was its employee, that the occurrence and *506 death arose out of and in the course of his employment, and that as a consequence the exclusive remedy for dependency benefits is limited to a petition in the Workmen's Compensation Division. Plaintiff disputed this contention, claiming that decedent was an independent contractor entitled to bring an action at law for damages arising out of the negligence of defendant.
With consent of the parties the court conducted a plenary hearing without a jury in advance of trial to determine the true status of decedent and whether plaintiff is barred by the provisions of the Workmen's Compensation Act. It is undisputed that decedent was killed as a result of an accident which arose out of and in the course of his work on the day of the occurrence. The narrow issue for determination, therefore, is whether he was an employee within the Workmen's Compensation Act and the cases interpreting the same.
Modern Transportation Co. is in the business of collecting and disposing of liquid wastes from sewage treatment plants and other sources. The sewage material is brought by trucks owned by Modern and others and unloaded into a holding tank at the Modern facility in Kearny from which it is ultimately pumped into barges and dumped at sea. On the day of the accident decedent had transported a load of this waste in a truck owned by Modern and was waiting to unload it into defendant's tanks when poisonous fumes or gases escaped from the tanks as a result of the dumping of some chemical waste by another trucker. Several persons were overcome and three of them died, including Rutherford.
For some time prior to May 1970 Rutherford had been operating a truck for Modern and was carried on its payroll as an employee. In May 1970 (the exact date unavailable in the proofs) a new arrangement was made between Rutherford and Modern whereby Modern removed him from the payroll as an employee and terminated all the requisite formal accompaniments of the usual employer-employee relationship, *507 such as withholding taxes, W-2 forms, social security, unemployment deductions, etc.
An agreement admitted into evidence reveals that in July 1970 Modern leased a 1970 Diamond Reo tractor to Rutherford, trading as John Anthony Trucking Co., without any stated consideration. In fact, the evidence supports the finding that no moneys were paid by Rutherford for the lease of this piece of equipment.
Under this agreement, and from the evidence relating to its implementation, the court finds that Rutherford was required to and did pay for the cost of fuel and other normal maintenance costs of the tractor. It is clear that the tractor was used solely for the transportation of sewage material in connection with Modern's business, and that Rutherford was directed each day by Modern's foreman when and where to go for this purpose.
The agreement guaranteed Rutherford sufficient hauling to return a minimum weekly income of $600. Invoices introduced as samples establish that Rutherford billed Modern on a weekly basis at an hourly rate of $10, and that the weekly billings far exceeded the $600 minimum.
Pursuant to the agreement Modern continued to maintain insurance on the truck. In addition, the agreement sought to eliminate any title interest in the vehicle in Rutherford by designating him as a "bailee for hire."
At the time of the change in relationship in May 1970 Rutherford opened a new bank account in the name of John Anthony Trucking, with an initial deposit of $20 furnished by his employer. The secretary of A & S Transportation Co. (an affiliate of Modern Transportation) handled all the secretarial and bookkeeping functions for Rutherford. She arranged for an employer identification number; she made out checks for John Anthony Trucking; she made bank deposits; she made out all necessary I.R.S. forms; she maintained all his books and records.
From the evidence the court finds that Rutherford spent his full time in the service required by Modern, and that all *508 the moneys deposited in the John Anthony Trucking bank account between May and October 1970 emanated solely from Modern's payments.
It also appears that Rutherford had purchased a Mack truck from Chemquid Disposals in November 1969 which was thereafter registered in his name, and that he made regular monthly payments on account with the checks paid from the John Anthony Trucking account. The evidence is vague as to the use of this truck. However, Mrs. Rutherford testified that her husband did some trucking for Chemquid, and invoices in evidence reveal billings from Rutherford to Chemquid between January and May 1970. It is also apparent that the Mack truck was utilized in connection with Modern's operations subsequent to May 1970, for the billings reflect charges from time to time at $10 an hour for each of two trucks, and other billings reflect a number of hours beyond the daily capacity of one truck and one driver.
Payroll records of John Anthony Trucking reflect three employees during 1970 as follows:

 Gross Earnings
James Lennon  Week ending June 12, 1970  $79.16
 Week ending June 18, 1970  79.16
 Week ending July 2, 1970  80.00
 Week ending July 9, 1970  79.16
Herbert Belton  Week ending June 12, 1970  120.00
 Week ending June 18, 1970  240.00
 Week ending June 26, 1970  250.00
 Week ending July 2, 1970  275.00
 Week ending July 9, 1970  226.00
Herman Shipman  Employment full-time from
 week ending June 26, 1970
 to September 25, 1970

From the limited evidence it can be inferred that the foregoing drivers were in the main employed by Rutherford to operate the Mack truck for hauling on behalf of Modern during the periods involved.
It is manifest that the foregoing panorama of facts contains certain elements pointing to an independent contractor *509 status and other elements pointing to an employee status. And if the issue arose in the context of the determination of vicarious liability through agency between Rutherford and Modern in a tort or contract action, the balancing of the facets of the relationship under traditional tests might lead to a conclusion that Rutherford was an independent contractor. However, as observed by Judge Conford in his dissent in Marcus v. Eastern Agricultural Ass'n, Inc., 58 N.J. Super. 584, 602 (App. Div. 1959) rev'd per curiam, 32 N.J. 460 (1960) (adopting dissenting opinion):
But they [various tests] have less relevance as guides where the inquiry determines the scope of social legislation for the benefit of workers in business and industry. Effectuation of the policy of statutes in that category requires that their use of the term "employee" not be accorded a constrictive and mechanical definition but rather one geared to comport with the specific statutory purpose.
From Marcus to Tofani v. LoBiondo Brothers Motor Express, Inc., 83 N.J. Super. 480 (App. Div. 1964), aff'd 43 N.J. 494 (1964), to Caicco v. Toto Brothers, Inc., 62 N.J. 305 (1973), there has devolved a shift in emphasis from the "right to control" test to the "relative nature of the work" test. From these cases decided by the Supreme Court it has been mandated that courts apply an extremely liberal interpretation to fact situations in order to effectuate the purpose of the Workmen's Compensation Act to protect workers for injuries arising out of their employment. See IA Larson, Workmen's Compensation Law, § 43 (1973).
No longer do the legal formalities of the relationship control. Hence the effort by Modern in this instance to divest itself of the various formal trappings of the employer-employee relationship in connection with agency, taxes, reports, etc., is of no great significance. What is more significant under modern tests for the determination of an employer-employee relationship is the fact that Rutherford spent all his time and derived all his income from the work accomplished for Modern and that the nature of the work performed *510 by him was but a cog in the overall operation of Modern's business. Rutherford depended completely on Modern for his livelihood, and in this connection was in the same economic position as an employee maintained on Modern's payroll as such.
In addition, Rutherford had to report daily at a certain time to Modern's place of business and was directed by the foreman as to the location where he was to make his pickups. He had no discretion in that regard.
Thus, if we apply a combination of the "relative nature of the work" and the "right to control" tests, the factual picture spells out the existence of an employee-employer relationship for workmen's compensation purposes. In fact, the operative evidential presentation so closely resembles the factual pattern in the cited cases decided by the Supreme Court that this court is precedent-bound to conclude that Rutherford is to be considered as an employee of Modern within the ambit of the benefits of the Workmen's Compensation Act.
In view of this finding, the court turns to the further contention of the plaintiff to the effect that the liberal interpretation pointing to the existence of an employment relationship is limited to cases where the alleged employee is a petitioner in the Workmen's Compensation Division seeking the benefits of the Workmen's Compensation Act. It is urged that where the employee or his representative seeks to invoke greater financial benefits from a common law negligence recovery, the motivation for the liberal approach no longer exists and that the court should apply the traditional tests applicable in other common law litigation. It is further suggested that Modern and its insurance carrier should be estopped from denying the existence of an independent contractor relationship because of the acts of Modern in seeking to create the superficial badges of such a relationship by its legalistic creativity in May 1970.
Of course, it is apparent that plaintiff takes this position because there exists a meritorious negligence cause of action *511 against Modern with the potential of a monetary recovery greatly in excess of that permitted by the Workmen's Compensation Act.
In effect, plaintiff seeks a different legal result because the issue arises in a different court and because in this instance it is to the financial benefit of decedent's dependents to assert that Rutherford was an independent contractor.
There are no New Jersey cases in which the alleged employee sought to establish his status as an independent contractor rather than the converse thereof. Every reported case involves the allegation by a petitioner in a workmen's compensation proceeding that he was an employee and the effort by the alleged employer to prove that the petitioner was an independent contractor.
Nevertheless, the appellate opinions on the subject establish a pervading principle of interpretation of the Workmen's Compensation Act. This principle must be applied equally to all parties in all courts wherein the issue for determination is whether an injured person is an employee governed by the Workmen's Compensation Act. It cannot depend upon the vagaries of each case, subject to the ad hoc contentions of either party for a greater advantage in one court or the other. Such a result would destroy the basic tenet of our judicial system to mete out equal justice for all.
As observed in 101 C.J.S. Workmen's Compensation § 918 (1958):
The rule that the compensation act is to be liberally construed in favor of its applicability is not altered by the fact that a plaintiff believes he can establish negligence and brings a civil suit for damages; the act is to be liberally construed, so as to include all services that can reasonably be said to be within it, not only when the injured person seeks its protection, but when he attempts to have himself excluded from the coverage of the act. [at 364]
The same thought was expressed by the Supreme Court of Kansas in Schafer v. Kansas Soya Products Co., 187 Kan. 590, 358 P. 2d 737 (1961), in the following:
*512 Notwithstanding the fact this court is committed to the rule of liberal construction of the Workmen's Compensation Act in order to award compensation to an injured workman in cases where it is reasonably possible to do so within the provisions of the act, consistency of decisions involving interpretation of the act cannot be maintained by construing it liberally in favor of compensation where the workman seeks compensation and strictly against compensation when he seeks damages. In other words, the same rule must govern a given set of facts whether invoked by an employer or an employee. Bright v. Bragg, supra [175 Kan. 404, 264 P.2d 494] and Shuck v. Hendershot, 185 Kan. 673, 347 P. 2d 362. [at 742]
To the same effect, see Cole v. Chevron Chemical Co.  Oronite Division, 477 F.2d 361, 365 (5 Cir.1973); Jackson v. Southern Pacific Co., 285 F. Supp. 388, 389 (S.D. Nev. 1968); Adamson v. Okland Const. Co., 29 Utah 2d 286, 508 P.2d 805, 807 (1973); Smith v. Alfred Brown Co., 27 Utah 2d 155, 493 P. 2d 994, 995 (1972).
Furthermore, it must be noted that if a person sustained injuries or death arising out of and in the course of his employment and his status is as an employee, his sole and exclusive remedy in New Jersey is under the Workmen's Compensation Act, N.J.S.A. 34:15-8. In the absence of a clear-cut waiver in writing signed by either party, neither the worker nor the business man has the option to proceed in a common law action. N.J.S.A. 34:15-9. Such a waiver was not executed by either of the parties herein. Hence plaintiff is statutorily limited to recovery in the Workmen's Compensation Division under the schedule contained in the act. She has no right to seek greater benefits from a common law action in negligence.
And by the same token, when a factual pattern is interpreted so as to designate the worker as an employee, that interpretation controls whether it redounds to the benefit of the employee or the employer. Any other conclusion would make a mockery of justice.
The general assertion of estoppel advanced by plaintiff is also without merit. There are totally absent the criteria of true estoppel in that decedent did not act to his detriment or prejudice in reliance upon the acts of Modern. *513 In the first place, there was nothing illegal or unholy in the creation of the paper relationship of an independent contractor in May 1970. It was a mutual arrangement, and for certain purposes was perfectly valid and effective. The result of the court's conclusion is not to vitiate the arrangement as invalid, but merely to disregard it for the limited purpose of interpreting the relationship between the parties under the Workmen's Compensation Act. Defendant cannot be estopped from asserting an employee-employer relationship merely because it participated in creating an independent relationship for other purposes. Modern did not assume a position upon which Rutherford relied to his prejudice. The position asserted by its insurance carrier in this litigation is not necessarily inconsistent and does not effect an unjust result. It rather produces a result consistent with law and justice, albeit less profitable to plaintiff.
In view of the foregoing, the defense asserted by Modern is a complete legal bar to the pending action. Since the exclusive jurisdiction lies in the Workmen's Compensation Division, judgment will be entered in favor of defendant Modern Transportation Company and against the plaintiff Rutherford.