701 A.2d 1275

SCOTT SLOAN, PLAINTIFF–APPELLANT, v. ADLAI E. LUYANDO,
NANCY H. LUYANDO, JOHN T. FEOLA, SANDY A. FEOLA,
JOHN DOE 1–10, (CORPORATIONS BEING FICTITIOUS AND
PRESENTLY UNKNOWN), DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted September 17, 1997—Decided October 7, 1997.

Before Judges SHEBELL, A.A. RODRÍGUEZ and COBURN.

*G.J. Gilligan & Associates, P.A.*, attorneys for appellant (*Andrew P. Slowinski*, on the brief).

*Gallo, Geffner, Fenster, P.C.*, attorneys for respondents (*Frank M. Coscia*, on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

This is an appeal by plaintiff, Scott M. Sloan, from the Law Division's dismissal on summary judgment of his civil action against defendants, John T. Feola and Sandy A. Feola, based on the determination that plaintiff's exclusive remedy was under the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –128. We affirm.

I

Plaintiff was injured in an automobile accident on December 10, 1992, while riding as a passenger in the front seat of a pick-up truck driven by John Feola, the sole proprietor of Notchwood Construction (Notchwood). The leased truck was registered in the name of John's father, Sandy Feola. Sloan was accompanying Feola to a warehouse to pick up a refrigerator needed for a renovation job being performed by Notchwood, when the truck rear-ended an automobile driven by defendant, Adlai E. Luyando,

and owned by defendant, Nancy H. Luyando, as the two vehicles proceeded westbound on Route 3.

The next day, Sloan visited a doctor and filled out a "Patient Information Sheet," listing "Notchwood Construction" as his employer, and Notchwood's phone number for his business phone. Sloan listed "carpenter" as his occupation and made no reference on this form to "S.M.S. Carpentry" (S.M.S.), a trade name he adopted in 1983 and registered in 1991 or 1992. He also marked "Y" next to questions on the form asking: "Is injury work related?" and "Has employer been notified?"

On September 9, 1994, a law firm filed a Workers' Compensation claim against Notchwood on Sloan's behalf. In November 1994, Sloan consulted his current attorneys and it was decided that the facts supported a civil suit rather than a Workers' Compensation claim. Therefore, a complaint was filed on December 9, 1994, naming as defendants the Feolas and the Luyandos, without mention of Notchwood or S.M.S.

Sloan provided certified answers to Form A Interrogatories propounded by defense counsel. Question number 10 of the Interrogatories asked: "If employed at the time of the accident, state: (a) name and address of employer; (b) position held and nature of work performed; (c) average weekly wages for past year; (d) period of time lost from employment, giving dates; and (e) amount of wages lost, if any." Sloan's answer was: "Plaintiff employed as a laborer for Notchwood Construction Company, 33 Notch Park Road, Little Falls, NJ 07424, weekly gross salary is $720.00. If any claim for lost wages—same will be supplied." There is no mention in Sloan's interrogatory answers of his "independent contractor" status, and again no mention of "S.M.S. Carpentry." During Sloan's deposition, his attorney abandoned the lost income claim.

On June 21, 1996, the Feolas filed a motion for summary judgment, claiming that Sloan was a Notchwood employee and his recovery therefore must be limited to Workers' Compensation benefits. This defense was not raised in the answer to plaintiff's

complaint filed by the Feolas, although remarkably it does appear as an affirmative defense in the Luyandos' answer. The Luyandos filed a motion for summary judgment claiming that, having been struck in the rear, they were without fault. Sloan also moved for partial summary judgment on the grounds that his injuries were caused in a rear-end type accident. On July 10, 1996, before the return date of the motions, Sloan's deposition was taken.

By way of certification in support of his motion for summary judgment, John Feola stated that he employed Sloan, determined what jobs Sloan would work on, when each job would begin and end, and that he transported Sloan to and from work each day. Feola claimed that he bid on every job that Sloan worked on for Notchwood, and that Sloan never directed any work to be accomplished on a Notchwood job. Feola maintained that only Notchwood supplied materials for the jobs Sloan worked on. Sloan's attorney filed a certification in opposition to the summary judgment motion, stating that "[i]t is very apparent that there was no 'employment' relationship entered into by plaintiff and defendant Feola ..." The certification gave no factual support for this conclusion.

On the return date of the motions, transcripts of Sloan's deposition testimony had not been received. Sloan's attorney advised the motion judge of the recent deposition and requested that the motion be carried so that the deposition could be considered as plaintiff's counsel represented he had not received the transcript. The court denied the request, stating that the court is "obligated to decide the motion solely on the competent evidentiary materials submitted at ... [the time of the hearing], not upon the representations of counsel as to the existence of other documentation that has not been provided to the Court, nor alluded to in the responding papers of plaintiff." The judge granted summary judgment in favor of the defendants and dismissed Sloan's complaint with prejudice, stating:

a review of ... [Sloan's] evidentiary materials provides, in the Court's mind, nothing other than a bare assertion that Sloan was an independent contractor. There is no competent material submitted in the cross-motion or in opposition to the motion for summary judgment to factually establish the existence of an independent contractor relationship, as the same has been defined by case law in the State of New Jersey. There are no competent facts submitted by certification or otherwise to raise an issue as to the existence of an independent contractor relationship ... the mere unsubstantiated representation of the existence of ... a[n] independent contractor relationship does not raise, in my judgment, a genuine issue, within the meaning of *Brill*, sufficient to defeat a judgment for summary judgment.

On August 5, 1996, plaintiff moved for reconsideration. He submitted a copy of his deposition transcript, a personal certification to support his claim of independent contractor status, and an additional certification of counsel. On September 13, 1996, after reviewing Sloan's deposition and the certifications, as well as listening to Sloan's attorney summarize all of the evidence, the judge asked Sloan's counsel:

[O]ther than the certification and the deposition testimony, in which these various allegations are made, do we have anything to corroborate the independent contractor relationship? Such as, for example, bidding on jobs, an independent office called SMS. Do we have evidence of any kind that he would contract out or bid out his services to other types of entities? Do we have anything of that kind?

In denying Sloan's motion for reconsideration, the court stated that it had

carefully reviewed the deposition testimony of Mr. Sloan. And—and in fact, [the court] has reviewed the August 6th certification by Mr. Sloan. And it is quite clear, from the deposition testimony and from the certification, the allegations of Mr. Sloan as to his independent contractor relationship with Notchwood is clearly conclusory throughout and self-serving throughout. There is no collateral information provided ... in which the independent contractor relationship is documented, confirmed, or evidenced.

## II

Under *R.* 4:46, summary judgment must be granted if:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion,

together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

[*R.* 4:46–2(c).]

In *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 666 *A.*2d 146 (1995), our Supreme Court articulated the present rule for determining whether there is a genuine issue of material fact for trial. The rule requires the motion judge to engage in an analytical process essentially the same as that necessary to rule on a motion for a directed verdict pursuant to either 4:37–2(b), 4:40–1, or 4:40–2. *Brill, supra,* at 536, 666 *A.*2d 146. In other words, the judge must decide

whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.... If there exists a single unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of *Rule* 4:46–2.

[*Id.* at 540, 666 *A.*2d 146.]

The Court emphasized that "when the evidence 'is so one sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)).

The court must not decide issues of fact, it may only decide whether any such issues exist. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146; *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75, 110 *A.*2d 24 (1954). "The 'judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146 (quoting *Liberty Lobby,* 477 *U.S.* at 249, 106 *S.Ct.* at 2511, 91 *L.Ed.*2d at 212). "Credibility determinations will continue to be made by a jury and not the judge." *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146.

■ Whether Sloan was an "employee" or an "independent contractor" is a mixed question of law and fact. Even though some factual issues are in dispute, we conclude that they are not sufficiently material to the application of the law as to preclude

summary judgment. Although these issues remain unresolved, we discern that upon analysis there is only a single, unavoidable resolution of the dispute. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146.

■ The exclusive remedy provision of the Workers' Compensation Act, *N.J.S.A.* 34:15–8, provides that:

Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee and for compensation for the employee's death shall bind the employee's personal representatives, surviving spouse and next of kin, as well as the employer, and those conducting the employer's business during bankruptcy or insolvency.

Thus, an employee's remedy against his employer for a work related accident is to seek workers' compensation benefits, and tort claims against the employer are barred. *Petrocco v. AT & T Teletype, Inc.,* 273 *N.J.Super.* 613, 614–15, 642 *A.*2d 1072 (Law Div.1994).

■ The term "employee" is to be defined liberally in order to bring as many cases as possible within the scope of the Workers' Compensation Act so that the cost of industrial accidents may be passed along as part of the cost of the product or service provided. *Santos v. Standard Havens, Inc.,* 225 *N.J.Super.* 16, 25, 541 *A.*2d 708 (App.Div.1988).

"The rule that the compensation act is to be liberally construed in favor of its applicability is not altered by the fact that a plaintiff believes he can establish negligence and brings a civil suit for damages; the act is to be liberally construed, so as to include all services that can reasonably be said to be within it, *not only when the injured person seeks its protection, but when he attempts to have himself excluded from the coverage of the act.*"

[*Id.* at 25–26, 541 *A.*2d 708 (quoting *Rutherford v. Modern Transp. Co.,* 128 *N.J.Super.* 504, 511, 320 *A.*2d 522 (Law Div.1974)) (quoting *C.J.S. Workmen's Compensation,* sec. 918, p. 364 (1958)) (emphasis added).]

The definitions of "employee" and "independent contractor" were explained in *Cappadonna v. Passaic Motors, Inc.,* 136 *N.J.L.* 299, 55 *A.*2d 462 (Sup.Ct.1947), *aff'd,* 137 *N.J.L.* 661, 61 *A.*2d 282 (E. & A.1948).

An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work.

The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done.

[*Id.* at 300 (quoting *Errickson v. F.W. Schwiers, Jr., Co.,* 108 *N.J.L.* 481, 483, 158 *A.* 482 (E. & A.1932)).]

Our courts first look to the "control test" to determine whether a worker was an employee or an independent contractor. *Kertesz v. Korsh,* 296 *N.J.Super.* 146, 152, 686 *A.*2d 368 (App.Div. 1996); *Brower v. Rossmy,* 63 *N.J.Super.* 395, 404, 164 *A.*2d 754 (App.Div.1960), *cert. denied,* 34 *N.J.* 65, 167 *A.*2d 54 (1961). That test considers whether the employer had "control" over the worker, or in other words, whether the employer had " 'the right to direct the manner in which the business or work shall be done, as well as the results to be accomplished.' " *Kertesz, supra,* 296 *N.J.Super.* at 152–53, 686 *A.*2d 368 (quoting *Brower, supra,* 63 *N.J.Super.* at 404–05, 164 *A.*2d 754). The control test is satisfied so long as the employer has the right of control, even though the employer may not exercise actual control over the worker. *Mahoney v. Nitroform Co., Inc.,* 20 *N.J.* 499, 506, 120 *A.*2d 454 (1956); *Kelly v. Geriatric and Med. Serv.,* 287 *N.J.Super.* 567, 575–76, 671 *A.*2d 631 (App.Div.1996); *Kertesz, supra,* 296 *N.J.Super.* at 153, 686 *A.*2d 368.

A second measure of employee status to be considered is the "relative nature of the work" test, under which the court will find that an employer-employee relationship exists if there is shown "substantial economic dependence" upon the "employer" and it is demonstrated that there is a "functional integration" of their respective operations. *Caicco v. Toto Brothers, Inc.,* 62 *N.J.* 305, 310, 301 *A.*2d 143 (1973); *see also Rossnagle v. Capra and Shell Oil Co.,* 127 *N.J.Super.* 507, 517, 318 *A.*2d 25 (App.Div.1973) (stating that a "court will inquire into whether the work done by the petitioner was an integral part of the regular business of the

respondent. If such is found then the court will determine that an employment relationship existed.").

Sloan testified at his deposition that he formed S.M.S., a sole proprietorship, sometime in 1983, but that he was an "employee" of Notchwood from 1983 to 1991. In his certification, Sloan stated that he left full-time employment with Notchwood in December 1991, upon his request for a salary increase. Sloan claimed that at John Feola's suggestion he began to work for Notchwood as a subcontractor, and that Feola explained to him that, under such an arrangement, no federal, state, social security, or unemployment tax deductions would be taken out of his salary.

To further support his contention that he was an independent contractor, Sloan claimed that he used an accountant to handle his tax matters, registered the name of his sole proprietorship with the County of Essex, and that Notchwood did not withhold deductions from the payments made for his services. He also claimed, with some uncertainty, that after 1991, Notchwood issued him Form 1090's for the payments made to him, rather than W2 forms. Also, Sloan stated that he supplied his own tools and equipment to perform his work, including routers, hand saws, chop saws, and various hand tools. In his certification, he asserted the only control exercised by Notchwood over his work was with regard to the completion time and scheduling of a particular job assignment. He acknowledged that most of the carpentry jobs he had received prior to the date of the accident were with Notchwood, but pointed to three other entities that he worked for in addition to Notchwood.

Accepting Sloan's version of the facts as true for purposes of determining the motion, we conclude that under both the control test and the relative nature of the work test, Sloan can only be found to be an employee and not an independent contractor as to Notchwood. Unquestionably, there was a "substantial economic dependence" by Sloan upon Notchwood for the work he performed through the date of the accident, as most of Sloan's work before the accident was with Notchwood. In addition, Sloan relied on Feola even for transportation to and from work. Sloan's explana-

tion that it was because it was his first year as an independent business that he was retained most often by Notchwood, and his argument that because he had performed work for other contractors he was an independent contractor, are unpersuasive.

We recognize that he had his own registered business name, with his own tools and equipment, and was treated by Notchwood for all tax and accounting purposes, as an independent contractor. However, the fact that he may have operated a carpentry business on his own does not mean he was not an "employee" on the numerous occasions he worked for Feola upon whom he remained economically dependent. We agree with the Law Division's observation in *Rutherford v. Modern Transp. Co.*, 128 *N.J.Super.* 504, 513, 320 *A.*2d 522 (Law Div.1974) that

> there ... [is] nothing illegal or unholy in the creation of ... [a] paper relationship of an independent contractor.... It was a mutual arrangement, and for certain purposes was perfectly valid and effective.... Defendant cannot be estopped from asserting an employee-employer relationship merely because it participated in creating an independent relationship for other.purposes.

The following excerpt from the opinion in *Caicco, supra,* is germane:

> The hauling of materials performed through decedent's labor was a cog in the wheel of respondent's operation as a subcontractor of Zimmerman in as realistic a sense as the hauling being done by respondent's regular employees. Decedent had made himself substantially dependent on respondent, economically, during the period in question. The fact that he sought work from others during slack periods with respondent does not derogate from that fact. ' Nor does the circumstance that he maintained the superficial trappings of an independent businessman so long as substantial economic dependence on respondent and functional integration of operations persisted. Compensation has frequently been awarded notwithstanding the employee maintained some sort of independent business concomitant with the relationship held to constitute employment in the particular case.
>
> [62 *N.J.* at 310, 301 *A.*2d 143 (citations omitted).]

Turning to the control test, we are convinced, as was the motion judge, that a reasonable factfinder must come to the unavoidable conclusion that Feola had sufficient control of Sloan's work to compel his classification as an employee, despite the fact that he no longer remained on Notchwood's payroll as a regular employee. Sloan was paid not by the job, but by the time his work consumed. He cites no instance of bidding on a Notchwood project after consideration of the proposed work. It does not appear that he could decide when to work or how to accomplish

the assigned work, or that he could choose what jobs to accept or reject when summoned by Feola. Whether he actually did or not, we have no doubt that Feola had the right to direct the manner in which Sloan would perform the assigned work as well as the result to be accomplished. *Kertesz, supra,* 296 *N.J.Super.* at 152–53, 686 *A.*2d 368. This is particularly true in view of Sloan's economic dependence on Notchwood. Summary judgment was properly granted.

Our affirmance of the dismissal with prejudice of plaintiff's complaint leads us to one further observation. An obvious injustice will result if the voluntary dismissal of Sloan's petition in the Workers' Compensation Division is allowed to stand. We, therefore, call the attention of the parties to the holdings in *Beese v. First National Stores,* 52 *N.J.* 196, 244 *A.*2d 689 (1968) and *Estelle v. Board of Education of Red Bank,* 14 *N.J.* 256, 102 *A.*2d 44 (1954), as authority for the filing of a motion to set aside the prior dismissal of the appellant's Workers' Compensation petition.

Affirmed.